FRANK McMAKEN, Administrator, *et al.* v. LUCIUS C. NILES *et al.*, Appellants.

3 Notice of Unrecorded Deed: Parol Evidence: PRINCIPAL AND AGENT. Where a husband buys land for his wife, she is charged
1 with what notice he had of an unrecorded deed, and oral evidence received without objection, is sufficient to show that the land was
2 conveyed by such deed, when the husband bought. That the unrecorded deed was not acknowledged is not material between parties to such deed or those who knew of the deed.

Practice on Appeal. That the purchaser should be subrogated to the
4 rights of a mortgage paid off by him which is superior to the unrecorded deed, can not be first urged on appeal.

*Appeal from Harrison District Court.*—HON. A. VAN
WAGENEN, Judge.

SATURDAY, OCTOBER 6, 1894.

ACTION in equity to quiet the title to real estate.
There was a hearing on the merits, and a decree in
favor of the plaintiffs, from which the defendants ap-
peal.—*Affirmed.*

*L. R. Bolter & Sons* for appellants.

*Roadifer & Arthur* and *S. I. King* for appellees.

ROBINSON, J.—This action involves the title to a
forty acre tract of land situated in Harrison county.
One William Bishop became the owner of the land in
September, 1870. The plaintiffs claim that about the
year 1873 Bishop sold and conveyed the land to one
Andrew Davis. In the year 1875, Davis executed to
C. S. McMaken a warranty deed for the land, which
was duly recorded in November of that year. In the
year 1888, C. S. McMaken died intestate. In Septem-
ber, 1889, Bishop executed to Mrs. Sarah E. Hubbard
a warranty deed for the land. In April, 1890, she gave
to George W. Coffman a warranty deed for the land
and, eight days later, Coffman gave to her a quitclaim
deed for it. In July of the same year, she gave to the
defendant Charles Hurst a mortgage thereon, and in
the month following, she gave to the defendant Niles a
warranty deed therefor. He paid the mortgage debt,
which amounted to about one hundred and sixty dol-
lars, redeemed the land from tax sale, and paid some
taxes thereon, and in April, 1891, he executed a war-
ranty deed therefor to the defendant George Tufley.
The plaintiffs are the administrators of the estate of C.
S. McMaken, his widow and heirs, and claim that the
land in question belongs to that estate. The defend-

ants deny the alleged conveyance by Bishop to Davis, and insist that if it was made, they had no knowledge of it, but acquired title to the land in good faith as innocent purchasers for value. The district court found and decreed the plaintiffs to be the absolute and unqualified owners of the land, and taxed the costs to defendants.

I. No conveyance of the land from Bishop to Davis was ever recorded, and none was offered in evidence. But both Bishop and Davis testify that the land was sold, and a deed therefor given by the former to the latter in or about the year 1873. Some objection is made in argument to the sufficiency of this testimony to prove a transfer of ownership, and it is urged that it is not shown that the alleged deed was ever acknowledged. The testimony in question was received without objection, and shows with sufficient clearness that the land was in fact sold and conveyed to Davis, as claimed by the plaintiffs. Whether the instrument of conveyance was formally acknowledged by the maker, is not material as to the parties to the instrument and persons having notice of it.

II. The evidence in regard to knowledge, on the part of the defendants, of the deed from Bishop to Davis is not so conclusive. It appears, however, that C. S. McMaken employed Stern & Milliman, of Harrison county, to act as his agents, and they redeemed the land from tax sale for the delinquent taxes of the years 1873 to 1876, inclusive. About the year 1882, John Coffman held a tax sale certificate for the land, and agreed with defendant Tufley and one Klutts to sell them the land in case he should obtain a tax deed therefor. Tufley and Klutts did not wait for the tax deed, but took possession of the land, fenced it, and used it as a pasture. Coffman failed to obtain a tax deed, and about the year 1887 they sold the fence to

one Scoular.   He took possession of the land by consent of Stern & Milliman, and used it as a pasture during the years 1887, 1888, and 1889, the last two years by consent of Stern & Milliman as agents of the administrator of the estate of C. S. McMaken.   They leased the land for the year 1890 to George W. Coffman, who also used it as a pasture.   The purchase of the land for Mrs. Hubbard was made by her husband, who gave in exchange for it a mare worth not more than twenty dollars.   He was informed by Bishop, at the time, that he had traded the land to Davis, and had also been informed by Stern & Milliman that Bishop had conveyed the land to Davis. It is plain that the husband of Mrs. Hubbard knew of that conveyance when he made the purchase of Bishop, and that he entered into the transaction for his wife for speculative purposes, because the records of the the recorder's office did not show a conveyance to Davis.   She is chargeable with the knowledge her husband possessed when the purchase was made. Before the defendant Niles purchased of Mrs. Hubbard he knew that the plaintiffs claimed to own the land, and that George W. Coffman was occupying it.   Niles was in possession of the land when Tufley purchased it of him, but it is shown that before that time it was generally known in the neighborhood that plaintiffs claimed to be the owners of the land, and that Tufley knew that fact.   When Coffman talked of purchasing in 1890, Tufley said, in effect, that he feared Coffman was buying a lawsuit.   We conclude that it is shown by a preponderance of the evidence that neither Tufley, Niles, nor Mrs. Hubbard was an innocent purchaser of the land, and that each purchased with actual or constructive notice of the rights of the plaintiffs.   It is said, however, that George W. Coffman was an innocent purchaser, and that Mrs. Hubbard acquired title by the reconveyance from him free from all equities in

favor of the plaintiffs, and that she transferred that title to her grantees. It is also said that the mortgagee Hurst acquired an interest in the land superior to that of plaintiffs, equal to the value of the mortgage, which was transferred to Niles when he paid the mortgage debt, and afterward acquired by Tufley. It seems that George W. Coffman's purchase was conditional, and never completed, and he knew at the time that the title to the land was in dispute. Whether Hurst had any actual knowledge of the rights of the plaintiffs is not shown, but he is chargeable with such notice as was given by the occupation of the land by Coffman under a lease obtained of Stern & Milliman at the time the mortgage was given. A further objection to the claim of a right acquired by payment of the mortgage is the fact that it was not made in the pleadings, nor on the trial in the district court. Whether relief on that ground could have been granted, in any event, on the evidence submitted, we do not decide. It is our opinion that the decree of the district court is sustained by a fair preponderance of the evidence, and it is therefore AFFIRMED.