L. A. ANDREW, State Superintendent of Banking, Plaintiff, v. NORTHWEST DAVENPORT SAVINGS BANK, Defendant.

IN RE RECEIVERSHIP OF NORTHWEST DAVENPORT SAVINGS BANK, D. W. BATES, Receiver, Appellee, v. CHARLES E. WERTHMANN et al., Appellants.

No. 42371.

MARCH 6, 1934.

Bush & Bush, for appellant.

Edward L. O'Connor, Attorney-general, for the State.

Louis E. Roddewig, for appellee.

EVANS, J.—There is no substantial conflict in the evidence. That the claimants were the owners of the proceeds of their respective items of property is conceded. That they never consented to, or knew of, the exchange of those proceeds for a cashier's check of the bank is clear upon the record. The conversion of the proceeds into a cashier's check payable to Eggert and signed by him as cashier was accomplished by the joint action of Eggert and of the teller of the bank. There can be no doubt under the authorities that an agent, who collects the funds of his principal, holds such funds as a trustee and that the title thereof rests in the principal and not in the agent. It is equally true that an unauthorized disposition of the funds by the agent does not divest them of their trust character except where the rights of third parties without notice become involved. Under the record in this case the duty of the agent to turn over the proceeds to his principal had fully matured long prior to December 26, the date of the receivership. The general rule applicable to such cases is cited by us in Cable v. Iowa State Savings Bank, 197 Iowa 393, 194 N. W. 957, 197 N. W. 434, 31 A. L. R. 748, as follows:

"The law is well settled that the title to property consigned to a factor or commission merchant for sale remains in the consignor, and that such factor or commission merchant holds the proceeds derived from the sale of such property in a fiduciary or trust capacity, and that its character is not changed by being placed to his credit in the bank * * * that the owner may maintain an action in equity against a bank to impress a trust upon any portion of the funds deposited therein by such factor or commission merchant to his own credit and remaining in said bank, unless it has acquired an equitable right thereto without notice of the true claims of the owner."

In 2 C. J. 881 and 882, the rule of the authorities is summarized as follows:

"The general rule is that the principal may recover his property or its value from a third person, where it has been wrongfully transferred by his agent contrary to his authority. Thus where an agent without apparent authority uses property of his principal to liquidate his own indebtedness to a third person, or otherwise disposes of it, such property or its value may ordinarily be re-

covered by the principal by an action of replevin or other appropriate action. It is no defense to the third person that the agent is liable to the principal for his wrongful act, or that the third person has promised to pay the agent for an indebtedness owing to the principal. * * *

"Money or property intrusted to an agent for a particular purpose is impressed by the law with a trust in favor of the principal until it has been devoted to such purpose; and where it has been wrongfully diverted by the agent such trust generally follows the fund or property in the hands of a third person, and the principal is ordinarily entitled to pursue and recover it as long as it can be traced and identified."

In an annotation to the case of Cable v. Iowa State Savings Bank, above cited, in 31 A. L. R. 756, the rule is summarized as follows:

"The universally accepted rule that knowledge upon the part of a bank that deposits made by a debtor in his own name belong to a third person absolutely precludes the bank from applying such funds to the individual indebtedness of the depositor to it is recognized in the following recent cases."

In Andrew v. State Bank of New Hampton, 205 Iowa 1068, 217 N. W. 250, we said:

"Fundamentally, the remedy in actions of this kind is based upon an interest in or ownership of the particular property or fund claimed, rather than the relationship of debtor and creditor. 26 R. C. L. 1351, section 216, contains this text:

" '* * * The true owner of a trust fund traced to the possession of another has the right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him. * * * '

"First State Bank v. Oelke, 149 Iowa 662, 129 N. W. 70, expresses the same thought in this language:

" 'The right to a preference is based on a right in the particular property or fund, and the manner of acquiring such property or fund is not material, that being only an incident thereto.'

"Leach v. Iowa State Sav. Bank, 204 Iowa 497, 215 N. W. 728. * * *

"Returning now to the precise point involved, we pause to note

that controversies of this nature include at least two steps: First, the establishment of the 'trust'; and, second, the tracing into the custody of the receiver the deposit, payment, or 'property' previously made or delivered in or to the bank, which said receipts are asserted as the basis for the 'trust'."

Literally scores of our own cases could be cited in support of the foregoing rule; and quite as many could be cited from other jurisdictions.

II. The response of the appellee to the foregoing discussion is affirmative and by way of avoidance. These affirmative grounds are in substance as follows: He contends that Eggert became the agent for the claimants in his functions as clerk of the sale; that he was not thereby acting as agent of the bank; that the bank was not chargeable with his acts or with notice thereof; that the bank did not thereby become a trustee for the claimants; that Eggert had implied authority to make a temporary deposit of the funds as a means of protecting the safety thereof; that the deposit therefore was rightful and that the bank had a right to receive the same as a general deposit; that such deposit or purchase of cashier's check was duly ratified by the claimants and that such ratification operated as authority to make the same.

It is clearly true that in performing his functions as clerk of the sale Eggert was acting as agent for the claimants and not otherwise. It was by reason of such relation he became a trustee. Granting that the bank was not chargeable with his acts as sole agent for the claimants, it does not follow that it might not be deemed chargeable with notice of his wrongful acts in making the deposit or issuing the cashier's check. The deposit was made by the joint action of Eggert, the cashier, and Thoem, as teller of the bank. The cashier's check was written on December 9. The body thereof was written by the teller, Thoem. It named "Eggert, Clerk" as payee. The check was signed by Eggert on December 10, and signed by him as cashier as follows: "Albert Eggert, Cashier." It is plain therefore that Eggert purported to act, both as agent for the claimants and as cashier for the bank. He acted for the interest of his bank in receiving the deposit; and acted against the interest of the claimants in that he deposited their funds in an unsafe place. The rule of implied authority invoked by the plaintiff has been stated by us as follows:

"Temporary 'deposit' of these trust funds for such custody, to accomplish safe-keeping, does not involve 'the loan of money' or the 'management of the ward's affairs.' * * * Administrators and trustees are permitted, without court authority, to deposit in banks for 'safe-keeping' for the time being and are not personally liable for loss arising therefrom, unless there was negligence or fraud in selecting the institution." Andrew v. Sac County State Bank, 205 Iowa 1248, 218 N. W. 24.

It will be noted that such rule requires from the agent good faith and reasonable prudence. Neither of these virtues was exercised in this case. Eggert was interested in this bank. He was an officer thereof. He acted in his own interest. He created a hostility of interest between him and his principal. The bank in which he was depositing was on the brink of insolvency. Eggert, as cashier of the bank, presumptively knew its condition. Not only did he fail to prove that he acted prudently and in good faith, but we are satisfied from a reading of the record that he acted affirmatively in bad faith in that he acted knowingly against the interest of his principal. We see no reason for saying that the bank was not chargeable with notice of all that its cashier knew when he made the deposit and signed the cashier's check, as cashier. There is no showing of any necessity for the deposit at all in the interest of safety. The argument in that respect is predicated solely upon Eggert's assertion. The implication of Eggert's evidence is that the funds existed in his hands in the form of checks and that he had to collect them. If the funds existed in the form of purchaser's checks, then it was the duty of Eggert to collect them and not to transfer them. There was no occasion for any other conduct on his part than to hold the checks until he did collect them. If on the other hand the funds existed in the form of currency collected, he had no right to withhold them. Request for them was made on December 10. There is no explanation in the record other than that indicated why Eggert should have deferred payment. The amount of the sale as reported by him from the first was $1,501.45. For eighteen days he held these funds in spite of the importunity of the claimants, and until the bank closed its doors. The amount was still $1,501.45. On the 10th of February he purported on his own motion, and without consultation with, or knowledge of, the claimants, to file a claim in their behalf as general depositors. With the claim he filed pur-

ported assignments to each claimant of the amount of the respective amount due him. The total sum was still $1,501.45. There is no rational explanation apparent in the record, which justifies such conduct consistently with good faith. Eggert was clearly acting in his own interest as cashier of the bank and not in the interest of the claimants. His interest was clearly in conflict with that of his principal. Eggert did at one stage of his testimony put forth the explanation that $1,501.45 did not comprise all the proceeds of the sale and in effect that he was holding that sum until he could collect the rest. But this statement was so inconsistent with all the other testimony in the case, that it has not been pressed in the submission. Concededly not a dollar was reported by him at any time in excess of $1,501.45. This brings us to the question of ratification. These claimants were depositors of this bank and had accounts therein in varied depleted amounts. One of them drew a check upon his account for the payment of a bill. He believed that the amount of this check was less than the amount of his account. In fact he slightly overdrew his account. This circumstance is pleaded as a ratification. The theory is that he drew on the proceeds of the auction sale. The fact is undisputed that none of the claimants knew that their funds had been deposited in the bank or that they were represented by a cashier's check. Nor was his overdraft ever charged against such proceeds at any time by the bank officials. Knowledge and intent are necessary elements of ratification. Neither was present in this case. One other of the claimants on one particular day called for his funds and received only the previous excuse. In his importunity he informed Eggert that he had two pressing bills that he desired to pay. Eggert instructed him to draw his checks on the bank and that he would see that they were taken care of. The claimant drew accordingly on his existing account. This also operated necessarily as an overdraft and was cared for as such. This claimant did not purport to draw upon the auction proceeds; nor did he know that they were on deposit; in neither of the two foregoing instances are the elements of ratification to be found.

We hold therefore upon this record that Eggert deposited these funds in bad faith in a failing bank in which he was interested adversely to his principal; that in so far as he received these funds to himself as purported cashier, and through the joint participation of Thoem, the teller of the bank, the bank was chargeable with

notice of his act and therefore with notice of his breach of faith. It is true that a deposit in a bank made by a trustee for his beneficiary when rightfully done, becomes ordinarily a general deposit. However, this is not true where an agent in breach of faith or excess of authority deposits in his own name the funds of his principal and the bank has knowledge of that fact. In such a case the bank itself becomes a trustee.

As to the identification of the funds and the tracing of the same into the hands of the receiver, the parties stipulated in the court below. It was agreed that these funds were traceable into the hands of the receiver. We are of the opinion therefore that the trial court erred in its denial of relief to the claimants.

The order appealed from must accordingly be reversed.

CLAUSSEN, C. J., and KINDIG, ALBERT, and STEVENS, JJ., concur.