Argued September 14, affirmed in part, reversed in part
November 5, 1971

ALLDRIN, *Respondent, v.* LUCAS ET UX,
*Appellants.*

490 P2d 141

*Claud A. Ingram,* John Day, argued the cause and filed briefs for appellants.

*Glenn D. Ramirez,* Klamath Falls, argued the cause for respondent. With him on the brief were Ramirez & Hoots, Klamath Falls.

Before O'CONNELL, Chief Justice, and MCALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

This is an action at law to recover a sum of money as a commission for securing a loan for defendants. Trial was commenced before a jury. During the trial, both parties stipulated that the jury be dismissed and the case tried to the court. The court made findings of facts and granted judgment in favor of plaintiff. The defendants appeal.

The evidence discloses the following sequence of facts. Plaintiff was a loan correspondent for a life insurance company and had known defendant Walter J. Lucas for twenty years. Mr. Lucas had an option to purchase the ranch on which he lived, near Mitchell, Oregon. He required a loan of $600,000, to be secured by a mortgage on the ranch property, to enable him to exercise his option to purchase. Mr. Lucas contacted the plaintiff for the purpose of securing such

a loan. In return for plaintiff's services, Mr. Lucas signed the following letter agreement:

"FARM LOANS
Caleb N. Alldrin
1026 McHenry, Suite 2
Modesto, California

Gentlemen:
For your service in connection with your obtaining a Life Insurance Company Loan on my ranch we agree to pay you 1½ [%] of the total amount of the loan, which will be accepted by us.
You will obtain this fee when you have a firm written commitment from your company.

/s/   W. J. Lucas
Very truly yours,"

Plaintiff investigated the ranch and Mr. Lucas's financial condition and submitted the necessary report to the John Hancock Mutual Life Insurance Company, hereafter referred to as the insurance company.

On May 22, 1968, based on plaintiff's recommendations, the insurance company issued their commitment for a loan to defendant Walter J. Lucas in the amount of $600,000, to be secured by a mortgage on the ranch property. The terms and conditions of this commitment by the insurance company were accepted in writing by Mr. Lucas. The commitment provided, inter alia,

"This commitment is given on the understanding that John Hancock shall not be obligated to make the loan until February 1, 1969 but John Hancock agrees, it will, as an accommodation to you, enter into an agreement in the form attached hereto and made a part hereof to purchase a loan in said amount from an interim lender acceptable to John Hancock who is willing to make said loan to you until John Hancock becomes obligated under

the terms hereof to make or purchase said loan. If an interim lending arrangement is desired by you, it shall be on the following basis."

Thereafter, the commitment set forth in detail a "SALE AGREEMENT FOR LOAN (To be on Interim Lender's Stationery)."

The option of Mr. Lucas to purchase the ranch expired in October 1968. On June 14, 1968, on the basis of the insurance company's commitment, the defendants secured a loan of $600,000 from the United States National Bank of Oregon. Both defendants executed the note and mortgage in favor of the bank. This is the first time that the signature of defendant Alice J. Lucas appears on any of the instruments. On November 13, 1968, the United States National Bank of Oregon, for valuable consideration received, assigned the defendants' note and mortgage to the insurance company.

Defendants assign as error the court's failure "to grant appellant's motion for an involuntary nonsuit on the grounds that the plaintiff had failed to prove performance on the plaintiff's part." Defendants argue, in support of this assignment of error, that "a party who pleads an agreement cannot vary the terms of the agreement pleaded on trial." The defendants argue further, in effect, that the plaintiff did not secure a loan for them from the life insurance company but, rather, defendants secured their own loan from the United States National Bank of Oregon.

The defendants, in support of this assignment of error, rely on *Waterway Terminals v. P. S. Lord,* 242 Or 1, 44, 406 P2d 556 (1964) ; *Dicillo et al v. Osborn et al,* 204 Or 171, 186, 282 P2d 611 (1955) ; *Borgert v. Spurling et al,* 191 Or 344, 352, 230 P2d

183 (1951). These cases stand for the proposition that the pleadings in a cause are judicial admissions. Also, defendants cite *Setser v. Commonwealth,* 256 Or 11, 470 P2d 142 (1970), and *Killam v. Tenney,* 229 Or 134, 149, 366 P2d 739 (1961). These cases involve real estate brokers' employment contracts and hold, in effect, that a broker does not earn a fee until an enforceable contract has been entered into with a purchaser who is ready, willing, and able to buy on the terms fixed by the owner, and with a purchaser who has the financial ability to perform. This case does not involve a question of judicial admissions nor is it a case where a broker is selling real estate and must find a buyer ready, willing, and able to purchase, and financially able to pay the agreed purchase price in order to recover his commission.

Defendant also relies on *Northwestern Agencies v. Flynn,* 138 Or 101, 5 P2d 530 (1931). This case can be distinguished, on the facts, from the case at bar. In *Northwestern Agencies,* after an exchange of letters defining the terms and conditions of the loan sought, the defendant rejected the proposal and withdrew the offer to borrow. There was no meeting of minds and the defendant did not receive the desired loan of money.

Defendants are correct in asserting that the plaintiff did plead "* * * that if Plaintiff would secure a loan for them in the sum of $600,000.00 to purchase certain real property located in Klamath County, Oregon, that they would pay Plaintiff the sum of one and one-half percent (1½%) of the loan obtained to the Plaintiff for services therein" and that "Plaintiff secured a loan to the Defendants from the John Hancock Insurance Company * * *."

ORS 16.630 provides:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just."

In *Brooke et ux v. Amuchastegui et ux,* 226 Or 335, 360 P2d 275 (1961), defendant, as an assignment of error, contended that there was a material variance between the allegation in the pleading and the proof. At page 340 we held:

"* * * It is within the discretion of the trial court to disregard a variance between an allegation and the proof, and nothing short of an abuse of such discretion can be assigned as error on appeal * * *."

In *LaBarge v. United Ins. Co.,* 209 Or 282, 287, 303 P2d 498 (1956), this court again stated:

"* * * Even should * * * the proof be considered at variance with the pleadings in this respect, the variance could not be deemed as material. ORS 16.630 * * *;"

In *Wehrung v. Portland Country Club,* 61 Or 48, 120 P 747 (1912), the defendant, as here, claimed that the evidence introduced was at variance with the allegations of the complaint. The court considered the problem in light of Section 97, L. O. L., the predecessor to our present statute, ORS 16.630. At page 54 the court stated:

"* * * It is within the discretion of the trial court to disregard a variance between an allegation

and the proof, and nothing short of an abuse of such discretion can be assigned as error upon an appeal. * * * A variance between the allegation of a pleading and the proof is not material, unless the adverse party has been actually misled to his prejudice upon the merits; and the party claiming or alleging that he was so misled must prove to the satisfaction of the court in what respect he was misled. * * * In such case, in the absence of proof showing that the party has been so misled, it is the duty of the trial court to treat the alleged variance as immaterial * * *." (Cases cited omitted.)

While the original complaint did not plead the original letter of agreement, it was received in evidence and stated, in part, "You will obtain this fee when you have a firm written commitment from your company." It would be difficult for the defendants to contend that this is a material variance between the pleadings and the proof because we find that they were not misled to their prejudice. The written commitment for the loan was also received in evidence at the time of trial. This is the commitment that the defendant Walter J. Lucas affirmed and agreed to in writing. It specifically sets forth all the terms of the commitment and that a contemplated interim lender, such as the United States National Bank of Oregon, would make and close the original loan which was in turn to be purchased from the bank by the insurance company.

■ The trial court found "* * * any deviation from the express terms of the brokerage agreement has been waived by the defendants as they have accepted the loan and have received substantially exactly what they bargained for * * *." There is substantial evidence to support the trial court's findings as to defendant

Walter J. Lucas, and we conclude that there was no error in this respect.

The defendants' other assignment of error is that the court erred in failing to grant defendant Alice Lucas's motion for an involuntary nonsuit for the reason there was no evidence that she was a party to the agreement to pay a commission. Defendants contend that a husband and wife relationship does not, of itself, make one the agent for the other, and the mere fact that Alice Lucas signed the mortgage does not justify the creation of agency by implication, relying on ORS 108.020; ORS 108.040; ORS 108.100.

The plaintiff contends that Alice J. Lucas, together with her husband, W. J. Lucas, accepted the benefits of the plaintiff's services and ratified and approved the acts of her husband when she executed the note and mortgage in favor of the United States National Bank of Oregon. The plaintiff, stating "* * * [a]lthough it is not strictly in point," relies upon *Higgins v. Insurance Co. of N. America,* 256 Or 151, 469 P2d 766 (1970). We agree that the case is not in point. In *Higgins,* an earnest money receipt was signed by Linn D. Higgins and Betty J. Higgins as purchasers, but only Mr. Higgins signed the agreement. The question before the court was whether or not Mrs. Higgins had an obligation to pay the purchase price and whether or not she had an insurable interest in the property.

We have closely examined the transcript and the exhibits. The record is devoid of any testimony establishing that defendant Alice J. Lucas had any knowledge of the original letter agreement on which the action is based or the subsequent acceptance in writing by Walter J. Lucas of the terms of the insur-

ance company's commitment. Mrs. Lucas was not called as a witness nor did anyone testify as to her knowledge or presence at any time the transaction was discussed, with the one exception that she did sign with her husband the note and mortgage in favor of the United States National Bank of Oregon. The trial court held that Mrs. Lucas ratified the agreement between plaintiff and her husband by accepting the benefits of the loan, subsequently received.

■ To establish Mrs. Lucas's liability under the terms of the letter agreement signed by her husband, the court would have to find that the acts of the husband were impliedly authorized by the wife or, if unauthorized, that the acts were subject to ratification and subsequently ratified by Mrs. Lucas. As there is no evidence that the acts of Mr. Lucas were authorized by his wife, to hold Mrs. Lucas liable on the contract by ratification requires (1) the existence of a principal, Restatement (Second), Agency § 87; (2) an act done as agent, Restatement (Second), Agency § 85; (3) that there was knowledge of the material facts, Restatement (Second), Agency § 91; and (4) that there was an intent by Mrs. Lucas to ratify her husband's acts.

> "A valid ratification of the unauthorized act of an agent or of a stranger who assumes to act as such requires that the principal have an intention, either express or implied, to ratify * * *." 2 CJS, Agency § 44.

There is no evidence that Mr. Lucas, at the time of signing the contract, was acting as his wife's agent or with her express or implied authority, or any indication that she intended to ratify the contract. The only evidence that she participated in this transaction is her signature to the note and mortgage in

favor of the bank. She might well have signed the note and mortgage without any knowledge of an agreement to pay the commission sued for in this action.

In *Cranston v. West Coast Life Ins. Co.,* 72 Or 116, 130, 142 P 762 (1914), this court held:

"Whenever a principal accepts the benefits of his agent's unauthorized acts *with knowledge of all the material facts,* he ratified the same. Silent acquiescence *with full knowledge of the material facts* may amount to a ratification if continued for an unreasonable length of time, \* \* \*." (Emphasis supplied.)

In *Phillips v. Colfax Company, Inc.,* 195 Or 285, 296, 243 P2d 276 (1952), it was held:

"It is elementary that when a corporation *with full knowledge of the facts,* accepts and retains the benefits of an unauthorized contract, it will be bound thereby \* \* \*." (Emphasis supplied.)

■ There is no evidence that Mrs. Lucas had knowledge of the letter agreement to pay plaintiff a commission. On the evidence presented in this case, we cannot say that Mrs. Lucas authorized or ratified her husband's agreement to pay plaintiff a commission. The trial court erred in this respect.

Affirmed as to defendant Walter J. Lucas; reversed as to defendant Alice J. Lucas.