Alexander **ABODEELY** et al., Appellants,

v.

Paul **CAVRAS**, Appellee.

No. 56058.

Supreme Court of Iowa.

Aug. 28, 1974.

Rehearing Denied Nov. 4, 1974.

Lloyd E. Humphreys of Nazette, Hendrickson, Marner & Humphreys, Cedar Rapids, for appellants.

J. E. Heiserman, Anamosa, and O. W. Lawrence, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

Alexander Abodeely, his wife Eleanor, his brother Edward J. and brother's wife Grace, vendors in an installment contract for sale of real estate in Cedar Rapids, brought an action in equity against vendee Paul Cavras after the monthly payments required by the contract were not made. In one division of their petition plaintiffs claimed they were entitled to specific performance with payment of back taxes, in-

surance and attorney fees. In the other division plaintiffs had asked judgment for the unpaid portion of the purchase price due on said contract, back taxes, insurance and attorney fees. Plaintiffs appeal from decree of trial court dismissing their petition in its entirety and at their cost.

June 25, 1964, defendant Cavras entered into a real estate contract with plaintiffs and their predecessors in interest for the purchase of premises described as "Lot 3, Block 26, of Carpenter's Third Edition to the Town of Cedar Rapids" for the sum of $13,000 payable $500 at the time of the signing of the contract and the balance in monthly installments of $100 each commencing July 1. The execution of the contract by Cavras is undisputed.

Defendant himself paid all installments until December 1968 at which time he sold the property to one Oren Carter to whom he assigned the contract. From June 9, 1969, the regular monthly installments were in arrears.

June 15, 1970, notice of forfeiture of the contract signed by Willliam O. Gray, attorney, was served on defendant. This fact is undisputed. After service of notice of forfeiture the matter was not further pursued by plaintiffs until the present action was instituted about a year later.

In answer defendant admitted execution of the contract, the terms thereof and failure to make the monthly payments in accordance with the provisions of the contract. He denied all other paragraphs of each division. In a separate division as an affirmative defense defendant alleged that on or about June 15, 1970, a notice of forfeiture of the contract was served upon him and that by reason thereof plaintiffs had elected to exercise their right of forfeiture as provided for in the contract and were barred and estopped from pursuing the purported actions asserted in divisions 1 and 2 of their petition. In reply plaintiffs denied the validity of the notice of forfeiture and denied causing it to be served on defendant.

■ I. In this equitable matter our review is de novo. Rule 334, Rules of Civil Procedure. As to the extent of our review in such matters see In Re Marriage of Jennerjohn, 203 N.W.2d 237, 240 (Iowa 1970).

Based on its findings of fact the trial court concluded, (1) the filing and recording provided by code section 656.5 relating to forfeiture of real estate contracts is not essential to complete the forfeiture as between the parties to the contract; such filing and recording is solely for the purpose of providing constructive notice of forfeiture to third parties; (2) plaintiffs are estopped to deny a complete forfeiture of the contract; and (3) this election of remedies by plaintiffs precludes specific performance or remedy of damages.

Plaintiffs' appeal presents two issues for review: (1) whether the trial court erred in finding plaintiffs had made an election of remedies and were estopped to deny a forfeiture of the real estate contract thereby precluding specific performance or recovery of damages and (2) whether the evidence supports the finding and judgment of the court.

Plaintiffs had alleged in their petition that after June 9, 1969, defendant failed to pay the installments due under the contract and had also failed to pay the insurance and taxes on the premises. As stated, defendant in answer both admitted and admitted and affirmatively alleged no payments were made under the contract after June 9, 1969, as the same fell due. It is not disputed defendant was in default from July 1, 1969.

■ Various appropriate remedies were open to plaintiffs as vendors when defendant defaulted. They had a right to elect whether (1) to keep good their tender of performance, demand the balance of the purchase price and sue for specific performance; (2) to terminate the contract because of vendee's breach, keep their land and sue for damages for the breach; (3) to rescind the contract in toto; or (4) to

enforce a forfeiture under the statute. Waters v. Pearson, 163 Iowa 391, 399, 144 N.W. 1026, 1029–1030 and First Nat. Bank v. LeBarron, 201 Iowa 853, 856, 208 N.W. 364, 366. See also 8A Thompson on Real Property, (Replacement 1963), sections 4474–4475.

Basically, the remedies involve proceeding on the contract or terminating or cancelling it.

It was stipulated that notice of forfeiture of real estate identified in the record as exhibit B was signed by attorney William O. Gray and was served upon Paul Cavras June 15, 1970, according to the return of service endorsed on the notice.

■ When the vendee defaults in the performance of a contract for the purchase of real estate the vendor may elect which of the foregoing remedies he wishes to pursue. When he exercises the option given him under the contract to declare a forfeiture and thus terminate the contract, the vendor cannot, in respect to this same default, thereafter change his position and at the same time or at another time proceed on a theory based on affirmance by suing for damages for breach of the contract or for specific performance since one is precluded from pursuing inconsistent remedies. The remedy of the vendor by way of forfeiture of the contract and the continued liability of the purchaser for the purchase money are totally inconsistent and may not both be pursued.

The principle that if a vendor chooses not to be bound by the land contract he may not seek payment from the defaulting vendee for part of the purchase price by an action on the contract is demonstrated in Stephenson v. Neppel, 192 Iowa 246, 182 N.W. 369; First Nat. Bank v. LeBarron, 201 Iowa 853, 208 N.W. 364; Orzechowski v. Kolodziejski, 281 Mich. 657, 275 N.W. 722; Wayzata Enterprises, Inc. v. Herman, 268 Minn. 117, 128 N.W.2d 156. The same rule is stated in somewhat different language in 55 Am.Jur., Vendor and Pur-

chaser, section 640 and 92 C.J.S. Vendor & Purchaser section 376a, and c.

The two causes of action asserted in plaintiffs' petition were based on the existence of the contract; yet plaintiffs previously elected to declare the contract at an end by service of notice of forfeiture on Cavras.

■ II. Plaintiffs concede the foregoing statements of law but attempt to circumvent them by contending there is one exception to the general principle. They argue that if the property has diminished in value the vendor may keep the premises and sue for damages. Waters v. Pearson, 163 Iowa at 398–399, 144 N.W. at 1029–1030 is cited for this principle. In that case defendant (vendor) and plaintiff (vendee) entered into a contract for the sale of real estate. Plaintiff made advance payments totaling $2000 prior to the time he was to receive possession but did not perform other obligations under the contract. On the appointed date for payment of the remainder of the purchase price plaintiff did not appear. Defendant, within a few days thereafter, deeming his tender good and plaintiff in default, leased the premises. Plaintiff then brought suit to recover the $2000 in advance payments.

The contract did not contain a forfeiture clause as required in Iowa before forfeiture is available. Lake v. Bernstein, 215 Iowa 777, 780, 246 N.W. 790, 792 and Schwab v. Roberts, 220 Iowa 958, 963, 263 N.W. 19, 21. Time was not made the essence of the contract although the circumstances justified the inference prompt performance was contemplated. The court held that even though plaintiff was the defaulting party if defendant elected to keep the land and terminate the contract because of plaintiff's default he could not keep the advance payments on the grounds of forfeiture or penalty. The case is factually distinguishable in that a forfeiture was not involved by reason of the contract. It does not support Abodeelys' contention.

III. In the other brief point asserted in connection with the first issue presented for review plaintiffs assert: "The alleged forfeiture in this case was not proper and effective to operate as an election of remedies and abandonment of the contract by the Plaintiffs." Essentially, they make two arguments: (1) the forfeiture was technically defective and (2) a forfeiture was not authorized by plaintiffs and their agent was acting outside his authority in undertaking such proceedings. In effect they insist there was no completed forfeiture between the parties.

The notice of forfeiture became part of the record through stipulation of the parties. Part of the stipulation was that attorney Gray had signed it and it was served on defendant. It was received in evidence subject to plaintiffs' objection to the "effect and the validity of the Notice."

We first consider those reasons advanced by plaintiffs as to why they contend the forfeiture was technically defective.

In reply to defendant's affirmative defense plaintiffs alleged: (1) the notice of forfeiture was not effective since none of the plaintiffs signed the same; (2) it was not caused to be served by plaintiffs; (3) the notice was not proper on its face; and (4) the affidavit necessary to complete the forfeiture involved was never filed and recorded as required by section 656.5, The Code.

Examination of the notice of forfeiture discloses it was signed "Eli Abodeely, attorney-in-fact by William O. Gray their attorney." This was followed by the attorney's Cedar Rapids address. The notice was addressed to Paul Cavras. It notified him that the written contract dated June 25, 1964, executed by the plaintiffs named in the present action and by their named predecessors in interest had not been complied with and would stand forfeited and cancelled as provided by the terms of the contract unless the default was performed within 30 days.

In Cassady v. Mott, 203 Iowa 17, 19–20, 212 N.W. 332, 333, this court in interpreting section 12393, The Code, 1924, which appears unchanged as section 656.5, The Code, 1971, held the statute does not in terms require the notice of forfeiture be signed by the parties if such notice is in fact signed by their attorney. Plaintiffs' contention in this respect is without merit.

In written brief and argument plaintiffs assert the notice is defective and not proper on its face since it contained an illegal acceleration of payment clause and requirement to pay. Plaintiffs cite no authorities in support of this contention nor do they urge any argument in support thereof. In the absence of a charge of fraud, misrepresentation or other equitable defense the inclusion of an acceleration clause does not in and of itself make a notice of forfeiture improper. Hampton Farmers Co-op. Co. v. Fehd, 257 Iowa 555, 558–563, 133 N.W.2d 872, 874–876. Inasmuch as plaintiffs do not urge either fraud, misrepresentation or other equitable defense, their contention has no merit.

Plaintiffs also contend proof and record of service was not completed as required by section 656.5.

The trial court found filing and recording pursuant to section 656.5, The Code, had not been done but concluded such was not necessary to complete the forfeiture between the parties, such filing being solely for the purpose of giving constructive notice to third parties.

The pertinent part of section 656.5 provides: " * * * [T]he party serving said notice * * * may file for record in the office of the county recorder a copy of the notice aforesaid with proofs of service attached or endorsed thereon * * * and when so filed and recorded, the said record shall be constructive notice to all parties of the due forfeiture and cancellation of said contract."

We agree with the trial court's interpretation of this statute. In our opinion the

purpose of the statute is to provide constructive notice of forfeiture to third parties. We now hold that as between the parties to a real estate contract compliance with the recording of the notice with proof of service attached or endorsed thereon is not essential to complete a forfeiture of a real estate contract containing a provision authorizing forfeiture in the event of a default. By analogy unacknowledged, unrecorded deeds are valid as between the parties to transfer an interest in real estate even though statutes require the recordation of every instrument affecting real estate. See in support McMaken v. Niles, 91 Iowa 628, 630, 60 N.W. 199, 200; Slattery v. Slattery, 120 Iowa 717, 723–724, 95 N.W. 201, 203; Schumacher v. Dolan, 154 Iowa 207, 210–211, 134 N.W. 624, 625; and Shanda v. Clutier State Bank, 220 Iowa 290, 295–296, 260 N.W. 841, 843. This contention is likewise without merit.

Plaintiffs also assert the notice of forfeiture was not served as required by section 656.3, The Code. However, as indicated, service of notice on defendant Cavras was not disputed. As a matter of fact, it was stipulated exhibit B, the notice of forfeiture, was served on Cavras June 15, 1970. Plaintiffs' contention is not in accordance with the record.

Other contentions mentioned by plaintiffs in written brief and argument as bearing on their assertion the notice of forfeiture was technically defective either are not argued and supported by authorities or the issues were not raised in the trial by plaintiffs' objection and hence error, if any, was not preserved in the course of the trial proceedings. See In re McDonald, 201 N.W.2d 447, 453 (Iowa 1972). In either event they present nothing for review.

IV. We next consider plaintiffs' remaining argument urged in connection with the first issue presented for review. They insist the notice of forfeiture upon which defendant relies as precluding plaintiffs from any relief under the contract by way of specific performance, judgment on the unpaid balance of the contract or recovery of damages was not authorized by plaintiffs or their authorized agent; that the power of attorney granted to Eli Abodeely was limited in its authority to a suit for damages.

Some narration of the factual background and circumstances leading to the service of notice of forfeiture on Cavras June 15 is deemed necessary for a determination of the problem.

Defendant is a resident of Cedar Rapids where he runs a shoe repair shop. At the time of trial Edward Abodeely and his wife lived in Tucson; Alexander and his wife resided in Phoenix. Alexander had lived in Cedar Rapids at the time of the sale of the premises on contract to Cavras but moved to Arizona shortly thereafter. It is not clear from the record how long Edward has lived in Tucson before trial or whether he had ever lived in Cedar Rapids.

Eli Abodeely is a distant relative—just how distant we are not told. He was not called as a witness in the trial.

Edward Abodeely testified he was engaged in property management, real estate mortgages and contracts. Before forwarding the power of attorney identified in the record as plaintiffs' exhibit 5 Edward telephoned Eli and asked if he would take over and see what he could do on obtaining a judgment. Eli agreed. Edward did not get a power of attorney from his brothers because he felt they would go along with him, had faith in his judgment. He planned to get their authority later when the papers were all presented. He described himself as "the spokesman for the family."

The power of attorney involved gave Eli the power, (1) "to file and sue for a judgment against Paul Cavros and Maria Cavros [in the record Cavras] for breach of contract involving * * *" the real estate hereinbefore described; (2) "* * *"; and (3) "to take any action necessary that he feels should be made involving the

above described properties, in reference to said lawsuit."

A few days before service of the notice Eli Abodeely contacted William O. Gray, a Cedar Rapids attorney. Gray testified Eli told him he was representing Edward Abodeely and the other Abodeelys named as vendors in a contract with Paul Cavras; that he wanted Gray to prepare a notice of forfeiture to be served on Cavras in regard to two pieces of property, including the one involved here, for various defaults. Gray said he told Eli that in his judgment this could not be done but the matters had to be treated separately and distinctly; based on examination of the contracts and what Eli told him regarding defendant's defaults Gray prepared, signed and caused to be served on Cavras two notices of forfeiture, one of which he identified as exhibit B.

Defendant testified Edward Abodeely stopped at his place of business, evidently some time before June 15, 1970, and told defendant that if he did not make the payments on the property Edward was going to call Eli who would "rip me to pieces." Cavras further testified Edward stated he was going to give Eli a power of attorney.

Mr. Lillios, defendant's son-in-law, and an attorney who was involved with the original purchase of the property, had several conversations with Edward about the default during the summer of 1969. In one long distance telephone conversation from Phoenix Edward stated that due to the inability to reach a settlement he was forced to give Eli power of attorney to hire an attorney and take legal action concerning the property. In Lillios' own words he testified Edward told him he was going to give Eli a power of attorney to forfeit the property.

The first question to be answered in connection with plaintiffs' contention the notice of forfeiture was not authorized by plaintiffs since it was not issued by all of them as vendors is whether Edward was the authorized agent of plaintiffs.

From our de novo review we find substantial competent evidence which would warrant a finding Edward was acting for all plaintiffs in their dealing with Cavras and his attorney concerning the property in this action. Alexander Abodeely did not deny when called as a witness that Edward was "the spokesman for the family." There is also evidence the family acquiesced for a considerable period of time in allowing Edward to handle the affairs of the property in Cedar Rapids. See Popejoy v. Eastburn, 241 Iowa 747, 754–756, 41 N.W.2d 764, 768–769; 2A C.J.S. Agency § 53; 3 C.J.S. Agency § 513; and 3 Am.Jur.2d, Agency, section 69. As the authorized agent for the family Edward would have the power to appoint an attorney-in-fact. See Restatement, Second, Agency, section 80.

The second aspect of this issue is whether, the power of attorney being granted, Eli had the authority to forfeit the contract of sale. The substance of this instrument, exhibit 5, has been set out earlier.

To answer this question requires that we construe the instrument, that is, determine its legal effect. This starts with interpretation which is the ascertainment of the meaning of the language used but is not a determination of the legal effect of the words or other conduct shown. See Restatement, Second, Contracts, section 226, Comment c, Tentative Drafts Nos. 1–7 and 3 Corbin on Contracts, section 534.

A formal instrument which delineates the extent of authority such as a power of attorney either executed on a printed form or otherwise giving evidence of having been carefully drawn can be assumed to spell out the intent of the principal accurately with a high degree of particularity. Since such instruments are ordinarily carefully drawn and scrutinized the terms used are given a technical rather than a popular meaning. See Comment h, Restatement, Second, Agency, section 34.

Section 37, *id.*, provides:

"General Expressions and Particularized Authorizations

"(1) Unless otherwise agreed, general expressions used in authorizing an agent are limited in application to acts done in connection with the act or business to which the authority primarily relates.

"(2) The specific authorization of particular acts tends to show that a more general authority is not intended."

This section has reference primarily to formal powers of attorney. Comment a to this section tells us its purpose "is to make clear that, where general terms are used which literally import to grant great authority, such terms will normally be interpreted as authorizing the agent to act only in connection with the business the agent is to perform. The more specific the enumeration of acts to be done the smaller the area to be included in the general statement."

In light of the foregoing statements of principle we conclude exhibit 5 must be construed as granting to Eli only the powers which are specified therein, that is, the power to file and sue for judgment for breach of contract involving real estate and to take any action he felt necessary in reference to the property and such lawsuit; that Eli could neither go beyond nor deviate from the powers thus given.

Nevertheless, the question remains whether plaintiffs were estopped from denying Eli Abodeely had authority to complete the forfeiture of the contract. This issue will be discussed in the following division.

V. Defendant in written brief and argument urges plaintiffs ratified the acts and conduct of Eli.

Restatement, Second, Agency, section 92 defines ratification as follows:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

The Restatement defines affirmance in this manner in section 83:

"Affirmance is either

"(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

"(b) conduct by him justifiable only if there were such an election."

The elements of ratification under the Restatement, Second, Agency, are: (1) the existence of a principal, section 87; (2) an act done as agent, section 85; (3) principal's knowledge of material facts, section 91; and (4) intent of the principal to ratify the agent's act which can be either express or implied, sections 93(1) and 94. See Alldrin v. Lucas, 260 Or. 373, 490 P.2d 141, 143.

The essential elements of ratification are stated in 2A C.J.S. Agency § 71, as: "(1) [A]cceptance by the principal of the benefits of the agent's act, (2) with full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement."

Another factor which often appears when deciding whether there has been a ratification is the acceptance of the benefits of an agent's unauthorized act. Miller v. Chatsworth Sav. Bank, 203 Iowa 411, 414, 212 N.W. 722, 724; Broer v. Fenton's Vigortone Co., 231 Iowa 1276, 1280, 4 N.W. 2d 416, 418; Shannon v. Gaar, 234 Iowa 1360, 1362, 15 N.W.2d 257, 258; and Ducommun v. Johnson, 252 Iowa 1192, 1197, 110 N.W.2d 271, 273.

In this state the following rules have been applied. To ratify the principal must have full knowledge of the facts. Marion Sav. Bank v. Leahy, 200 Iowa 220,

226, 204 N.W. 456, 458; In Re Estate of Thornwall, 233 Iowa 626, 635, 10 N.W.2d 35, 39. Intent is a necessary element of ratification. Andrew v. Northwest Davenport Sav. Bk., 217 Iowa 780, 786, 253 N.W. 133, 136.

The first two requirements of ratification under the Restatement view, the existence of a principal and an act done as an agent, are established under the facts of the present case. In the Edward-Eli relationship, Edward is the principal and Eli, the agent, acted as an agent in bringing about a forfeiture.

 Under our review of the record we find substantial competent evidence which tends to establish Edward had knowledge of the material facts. This knowledge may be either actual or inferred. Miller v. Chatsworth Sav. Bank, supra. The facts are undisputed Cavras was delivered notice of forfeiture on June 15, 1970, and Edward received notice of this forfeiture. Although Edward's testimony is somewhat convoluted the record does show he had a basic understanding of the significance of a "forfeiture" since his business was "property management, real estate, mortgages and contracts." Because Edward knew the forfeiture had been served and knew what the word "forfeiture" meant, the evidence would support an inference Edward had knowledge of the material facts.

The intent to ratify—the fourth essential element—may be express or implied. Alldrin v. Lucas, 490 P.2d at 144–145. Under the Restatement view the intent to ratify or affirm may arise in various ways. Restatement, Second, Agency, section 93(1) states: " * * * Affirmance can be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction, or by conduct justifiable only if there is ratification."

"An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." Restatement, Second, Agency, section 94; Federal L. Bk. v. Union B. & Tr. Co., 228 Iowa 205, 211–212, 290 N.W. 512, 515–516, rehearing denied and supplemented, 292 N.W. 852.

 Silence when one would naturally be expected to speak may be failure to repudiate and give rise to the inference of affirmance. Restatement, Second, Agency, section 94. Receipt or retention of benefits of the unauthorized transaction may constitute intent. *Id.* sections 98–99.

 Finally, failure to repudiate the unauthorized action within a reasonable time after learning of the transaction will be deemed a ratification or affirmance.

The following statement of principle is from Miller v. Chatsworth Sav. Bank, 203 Iowa at 413–414, 212 N.W. at 724:

" * * * [I]t is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after knowledge of the act of the agent comes to him. If he does not repudiate, the principal is held to have ratified. * * * [citing authorities]

"It would be impossible to enumerate all the various kinds of acts which may manifest affirmance. It may be manifested by written or spoken word, or from the acts or conduct of the principal indicating his approval, or it may be inferred from the known circumstances and his acts in relation thereto. * * * [T]he essence of ratification * * * is the manifestation of a mental determination by the principal to affirm the act." See also 2A C.J.S. Agency § 89 and 3 C.J.S. Agency § 402.

Although the record discloses there were several telephone calls from Edward to Mr. Lillios regarding the possibility of a settlement, these occurred, according to Edward's testimony, "probably eight or nine months" before he signed the power of at-

torney. As stated, after service of the notice of forfeiture nothing further was done in the matter until the present action was commenced in August 1971. At no time was there any communication to Cavras that Eli acted outside his authorization in causing the notice of forfeiture to be served on him. In other words, there is nothing in the record showing the forfeiture was repudiated until plaintiffs' pleadings were filed.

 There remains the principle that if there is no ratification in fact because one necessary element is missing (e. g. intent), the principal may be estopped from contending he has not ratified the unauthorized action. The estoppel to deny ratification operates to a third party who is misled. Restatement, Second, Agency, section 103, provides:

"Estoppel to Deny Ratification

"A person may be estopped to deny that he has ratified an act or transaction." See also 2A C.J.S. Agency § 87, p. 690.

The present record would warrant a finding Cavras changed his position in reasonable reliance upon being served with the notice of forfeiture which indicated on its face it was caused to be served by Eli Abodeely as attorney-in-fact for the vendors. A fair inference may be drawn from from the evidence that by reason of such reliance Cavras suffered loss of income from this rental property which he might have recouped after his assignee abandoned the contract.

Defendant had alleged in his affirmative defense a theory of estoppel as barring plaintiffs from pursuing the purported actions set forth in divisions 1 and 2 of the petition. There is evidence in the record which would support this theory.

 We conclude from our de novo review plaintiffs are estopped from denying there was a completed forfeiture of the contract upon which they base their claims for recovery and having made an election

of remedies they are barred from pursuing any relief under the contract by way of specific performance, judgment for the unpaid balance of the contract or recovery of damages.

VI. In connection with the second issue presented for review plaintiffs complain that the evidence does not support the findings and decree of the trial court.

 In equity matters, such as this, where our review is de novo it is this court's responsibility to review the facts as well as the law and adjudicate rights anew on those propositions properly presented, provided issues have been raised and error, if any, preserved in the course of the trial court's proceedings. While weight will be given to the findings of the trial court this court will not abdicate its function as triers de novo on appeal. In Re Marriage of Williams, 199 N.W.2d 339, 346 (Iowa 1972). This is what has been done in reaching our determination as announced in the foregoing divisions.

The case is therefore—affirmed.