Argued and submitted January 14, affirmed in part, reversed and remanded in part
March 23, 1983

# DURHAM et ux,
## *Respondents,*
### *v.*
# WARNBERG et al,
## *Appellants.*

## (78-6160; CA A23341)

660 P2d 208

Harold D. Gillis, P.C., Eugene, argued the cause and filed the briefs for appellants.

John H. Horn, Eugene, filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants appeal from a judgment on a verdict awarding plaintiffs general and punitive damages for fraud. Plaintiffs had sought (1) a declaration that defendants held certain real property in constructive trust for plaintiffs and an order compelling defendants to convey title to them and (2) general and punitive damages for fraud. The court, after hearing the evidence, granted defendants' motion to dismiss plaintiffs' first claim because plaintiffs had "unclean hands." The jury then returned a verdict for plaintiffs on the fraud claim and awarded them $25,000 general damages against both defendants and $10,000 punitive damages against defendant Bobby L. Warnberg.

Plaintiffs acquired residential property in Eugene in March, 1970. They wanted to refinance the property but were unable to do so. Plaintiff H. Warren Durham (Durham) testified that he contacted defendant Bobby L. Warnberg (Warnberg), a business acquaintance, and suggested that Warnberg take title to the property, get it "refinanced" and reconvey it back to plaintiffs at their request without consideration. Warnberg testified that he declined but agreed to purchase the property if plaintiffs paid the loan payments, taxes and insurance while they lived on the property and maintained it.

An earnest money receipt was signed by plaintiffs and defendants showing a $21,000 sale price. In April, 1971, plaintiffs gave defendants a deed to the property and defendants gave their note and mortgage on the property for $20,200 to Oregon Mutual Savings Bank. Plaintiffs received the proceeds from the loan and paid the liens on the property. Defendants, in 1973, executed and deposited in escrow a deed to the property back to plaintiffs in connection with a transaction at that time that did not close. The deed recited a consideration of $2,500 for the reconveyance.

Plaintiffs remained in possession of the property until 1974, when they temporarily left the country. Warnberg testified that in 1977, when he received delinquency notices from Oregon Mutual Savings Bank and found other people occupying the property, he sent plaintiffs a notice to

vacate the property. Plaintiffs returned to Eugene and met with Warnberg. Warnberg proposed to plaintiffs that if they would obtain a loan, pay off the remaining mortgage to Oregon Mutual Savings Bank and give him an additional $900, he would reconvey the property. Durham testified that he agreed to pay Warnberg the additional $900 but that Warnberg later raised the amount to $1,500, which Durham refused to pay, and the proposal was not carried out.

Plaintiffs initiated the present action in September, 1978, claiming that defendants had promised in 1971 to reconvey the property on demand without further consideration, that defendants did not at the time the promise was made intend to carry it out and that plaintiffs had just discovered the fraud.

■ Defendants first assign error to the denial of their motion for directed verdict. They argue that the fraud claim should not have been presented to the jury (1) as to Alice Warnberg, because there was no evidence that she represented to plaintiffs that she would reconvey the property upon their request for no additional consideration; (2) as to both defendants, because (a) an oral promise to reconvey is not enforceable under the statute of frauds,[1] (b) there was no evidence of damages, and (c) the fraud claim was barred by the statute of limitations. We address each basis for the motion separately.

All negotiations before and after the conveyance of the property occurred between Durham and Warnberg only. Alice Warnberg testified that at Warnberg's request she went with him to the title company in 1971 and signed the closing papers without any specific knowledge of the nature of the transaction. When asked if she and Warnberg, her husband, had discussed the property, she replied:

"Not really. I believe it's on record that I testified previously that I trusted my husband 100 percent, that he takes care of all the business affairs. And when he asked me to sign a paper, I sign it with complete trust. * * * The only thing I know is that we signed the papers at the Oregon

---

[1] Defendants pled the statute of frauds (ORS 41.580) and ORS 93.020 in their answer. On appeal they only argue that ORS 93.020 makes the promise unenforceable.

Mutual Savings Bank, and my husband told me this was a business deal with the Durhams, and I did not question him."

■ Defendants contend that there was insufficient evidence to raise a question of fact for the jury whether Alice Warnberg had authorized her husband to act as her agent in transactions concerning their jointly owned property. We disagree. An agency may be implied from attending circumstances, and the apparent relations and conduct of parties. *Young v. Neill et al,* 190 Or 161, 220 P2d 89, 225 P2d 66 (1950); *see also Alldrin v. Lucas,* 260 Or 373, 490 P2d 141 (1971). There was evidence presented from which a jury could find that Warnberg had general authority to represent his wife in their joint business affairs and that he was authorized to act here on her behalf. It was not error to deny defendants' motion for a directed verdict on this basis.

■ Defendants next argue that the fraud claim should not have gone to the jury, because the promise to reconvey was an unenforceable oral promise. Defendants rely on ORS 93.020(1), which provides:

"No estate or interest in real property, other than a lease for term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring it, or by his lawful agent under written authority, and executed with such formalities as are required by law."

Plaintiffs do not attempt by their fraud claim to create, transfer or declare an estate or interest in realty. Plaintiffs seek damages caused by reliance on defendants' alleged representation, when defendants took a deed to the property in 1971, that they would reconvey the property back upon demand. ORS 93.020(1) does not apply to plaintiffs' claim for damages for fraud.

■ Defendants next argue that their motion for a directed verdict should have been granted, because plaintiffs' evidence of damages was insufficient. They also argue that plaintiffs' pleading did not specify whether they were seeking general or special damages but simply stated plaintiffs have suffered "damages" in the amount of $68,745.

Defendants, however, did not object to plaintiffs' pleading of damages nor do they assign as error any objection to the introduction of evidence by plaintiffs of damages. Plaintiffs presented evidence that defendants retained the property, that it was appreciating residential property and that they had expended approximately $20,000 in maintenance and mortgage payments for the property since 1971. We conclude that plaintiffs presented evidence sufficient to create a jury question on damages resulting from defendants' fraudulent promise. *See Briscoe v. Pittman,* 268 Or 604, 610, 522 P2d 886 (1974), *overruled on other grounds,* 276 Or 107, 110, 553 P2d 1055 (1976).

■ ■ Defendants argue that plaintiffs did not prove that their claim was brought within two years of the discovery of the fraud. ORS 12.110(1). Although there was evidence that plaintiffs could have known as early as 1973 that defendants never intended to reconvey the property without further consideration, the evidence does not show as a matter of law that plaintiffs discovered the fraud more than two years before commencing the action. When plaintiffs should have known of the fraud is a question of fact for the jury, except where only one conclusion can reasonably be drawn from the evidence. *Mathies v. Hoeck,* 284 Or 539, 588 P2d 1 (1978). From our review of the record, the denial of defendants' motion for a directed verdict was not error.

■ Defendants' second assignment of error is the court's denial of defendants' motion for mistrial. During closing argument to the jury, plaintiffs' counsel remarked:

> "The judge will also instruct you that the plaintiffs, Mr. and Mrs. Durham, are not going to have that lot back. This was a determination that was based upon the law."

Defendants contend that the jury should not have been told of the court's previous ruling on the constructive trust claim and that counsel's comment was prejudicial and grounds for a mistrial.

■ Control of jury argument is "left largely to the discretion of the trial court, subject to reversal only for abuse of that discretion." *Amick v. Watson,* 280 Or 641, 645, 572 P2d 317 (1977); *Plourd v. Southern Pac. Transp. Co.,* 272 Or 35, 534 P2d 965 (1975). If plaintiffs had been successful in regaining title to the property, the amount of

damages actually suffered as a result of defendants' fraudulent promise would have been different. The basis of plaintiffs' claim for damages was their loss of the property, and counsel's statement was consistent with that claim. No restrictive instruction was requested. The trial court did not abuse its discretion in refusing to grant a mistrial.

■        Defendants next assign error to the following instruction, to which defendants objected:

> "Now, the two Defendants, Bobby and Alice Warnberg, are to be considered by you as having acted within the scope of their authority as agents of one another in their dealings and actions respecting the property which was the subject of this lawsuit. Therefore, you are to consider such acts and omissions of one to be the acts and omissions of the other."

Defendants argue that the instruction erroneously directed the jury to find an agency relationship between defendants as a matter of law. We agree. *Alldrin v. Lucas, supra; Young v. Neill, et al, supra.* As noted, there was evidence from which the jury could find an agency relationship between defendants. However, the record does not show an agency relationship as a matter of law. The trial court erroneously took this factual issue from the jury when it instructed it to consider "the acts and omissions of one to be the acts and omissions of the other." The error was harmless as to Warnberg, because the jury could only have found him liable for fraud on the basis of his own actions. We cannot say that the error was harmless as to Alice Warnberg, because her liability could only have been as Warnberg's principal. The judgment as to her must be reversed.

        Defendants' last assignment of error is that the court gave no instruction on general damages. The record shows that the court gave Uniform Jury Instruction No. 30.1 on general damages.[2] Defendants failed to object to the

---

[2] The court instructed the jury on general damages as follows:

"Now, if you find from the evidence and my instructions that the Plaintiffs are entitled to prevail then it becomes your duty to decide whether Plaintiffs have been damaged, and if so the amount of their damages. Plaintiffs must prove their damages in the case by clear and convincing evidence as I have instructed you.

"The amount asked for in the Complaint is not to be considered by you except that it does provide an outer limit, a maximum amount beyond which

court's instruction and requested no other instructions on damages. We need not consider this assignment further. *Meyers v. Muno,* 236. Or 68, 386 P2d 808 (1963).

The judgment is affirmed with respect to Bobby L. Warnberg; reversed and remanded with respect to Alice Warnberg.

---

you may not award damages. The fact that I am instructing you with regard to the measure of damages is not to be considered by you as any attempt by me to suggest that you should or should not award damages. The amount that may be awarded as general damages in this case may not exceed the sum of $68,745."