Argued and submitted March 2, 1987, affirmed January 13, 1988

WICKS,
*Respondent,*

*v.*

O'CONNELL,
*Defendant,*

FAWCETT,
*Appellant.*

(16-82-01216; CA A40212)

748 P2d 551

Rohn M. Roberts, Eugene, argued the cause for appellant. With him on the briefs was Adkins, Roberts & Roberts, Eugene.

Charles G. Duncan, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

238

## NEWMAN, J.

Defendant appeals a judgment for plaintiff for securities law violations.[1] ORS 59.115(1)(b); ORS 59.115(3). He asserts that the court erred when it admitted testimony, over his objection, and denied his motions for a directed verdict. We affirm.[2]

The jury could find that, in February, 1979, O'Connell formed a corporation to provide bus transportation and was a shareholder, director and president. Defendant was a shareholder, director and secretary and a friend of O'Connell. Defendant had also been involved in the corporation since its formation, frequently discussed its affairs with O'Connell and had a voice in its management, which increased as his financial involvement increased.

In May, 1980, defendant agreed to purchase the stock of Reed and Patrick, who together owned approximately two-thirds of the stock. Defendant paid $10,000 to both Reed and Patrick and gave notes of $10,000 to both, payable in monthly installments, for the balance of the purchase price.[3] The corporation agreed with defendant to pay the notes, although

---

[1] We do not discuss defendant's fourth, fifth and sixth assignments of error relating to plaintiff's fraud claim. They are moot in light of the amended judgment, which recites:

"[J]udgment is hereby entered in favor of Plaintiff against Defendant Robert Fawcett on Plaintiff's fourth statement of his cause of action [the fraud claim] for $23,000 together with interest of $4,351.85 and Plaintiff's costs and disbursements.

"As a result of these judgments and plaintiff's election for recovery on the First and Second statements, Plaintiff's total judgment against Defendant Robert Fawcett is the sum of the following and shall accrue interest at the statutory rate of 9% per annum from May 8, 1984 until paid:

"1. $23,000;

"2. $3,640.56; and

"3. Reasonable attorney fees and costs for the trial only of this matter in the sum of $9,480.55."

[2] The action was dismissed as to O'Connell, because he was discharged in bankruptcy. *See Wicks v. O'Connell,* 74 Or App 704, 704 P2d 537 (1985), *rev den* 300 Or 546 (1986). Appellant is defendant Fawcett, and the judgment appealed from is against him alone.

[3] As part of the stock purchase, defendant agreed to obtain the unconditional release of Reed and Patrick's guarantees on two promissory notes of the corporation to third parties totalling $162,000 and to indemnify and hold them harmless from liability under their guarantees of other corporate debt.

defendant remained directly liable. When the corporation was late in making payments, defendant instructed O'Connell to have the corporation pay. The purchased stock was pledged in escrow as security, but defendant could exercise the voting rights of the stock. On release of the stock, the corporation was to retire enough shares so that O'Connell and defendant would each own one-half of the issued stock.

The corporation employed plaintiff as a bus driver. In early 1981, he offered to invest in it. O'Connell discussed the offer with defendant, who opposed accepting it, and O'Connell rejected it. In July, 1981, defendant loaned $30,000 to the corporation, and O'Connell loaned $25,000. In September, 1981, the company was still short of funds, and O'Connell approached plaintiff about investing. They met several times and reached an agreement. Plaintiff would pay $35,000 for one-third of the corporate stock, and would receive a salary of $1,800 per month, be a vice president and director and have responsibility for the maintenance of the buses and supervision of the drivers. For the first $23,000, plaintiff would receive two-thirds of the stock that he was buying; in November, he would pay $12,000 and receive the balance. Defendant and O'Connell were each to sell to plaintiff one-half of his shares. They could not, however, complete the transfers unless the notes to Reed and Patrick were paid and the pledged stock released.

In their negotiations, O'Connell told plaintiff that he was defendant's agent; that he had talked with defendant and that defendant had approved the stock sale; that he and defendant had possession or direct control of the stock; that it was not encumbered; that it would be delivered to plaintiff in a timely manner; that his investment would materially assist the corporation to meet its immediate obligations and allow it to remain solvent; that part of the funds would be used for investments; that he would be given management responsibilities for the drivers and buses; and that he would be appointed a director. O'Connell did not tell plaintiff that at least part of the stock was in the ownership, possession or control of others, that the corporation was insolvent, that his investment would not make it solvent or that his investment was an above-average risk.

Without knowing that O'Connell had made misrepresentations and omissions, plaintiff paid $23,000 to the corporation on September 23, 1981. O'Connell used the money to cover an overdraft of the corporation and its payroll. Shortly thereafter, O'Connell discharged plaintiff from employment, rehired him and then discharged him again. Defendant told O'Connell to "get rid" of plaintiff, who did not receive any of the stock or other benefits. He discovered that the company was insolvent and that a portion of the stock was in escrow. He demanded reinstatement, back pay, return of the $23,000 and rescission.[4] Shortly thereafter, he filed this action.

Plaintiff claims that defendant is liable under the securities laws, because (1) he was liable for O'Connell's material misrepresentations of fact and omissions of material fact which were necessary to make his statements not misleading, ORS 59.115(1)(b)[5] and (2) he indirectly or directly controlled O'Connell, occupied a status similar to O'Connell in the corporation or participated in and materially aided O'Connell in the sale of the stock to plaintiff in which O'Connell made material misrepresentations and omissions. ORS 59.115(3).[6] The jury returned a verdict for plaintiff on each claim, and the court entered judgment for $23,000, interest and attorney fees.

---

[4] Plaintiff withdrew his recission claim.

[5] ORS 59.115(1)(b) provides:

"A person who sells a security is liable * * * to a purchaser of the security if the person:

"* * * * *

"(b) Sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."

[6] ORS 59.115(3) provides:

"Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with that person."

Defendant assigns as error that the court overruled his objection to testimony of plaintiff:

"[PLAINTIFF'S COUNSEL]: What, if anything, did Mr. O'Connell tell you about Mr. Fawcett approving of or disapproving of the offer of stock to you?

"[DEFENDANT'S COUNSEL]: Your honor, I'd object to that as hearsay. He's asking what Mr. O'Connell told him what Mr. Fawcett told Mr. O'Connell. It's—in fact it's double hearsay in that respect. We'd object to any testimony by Mr. Wicks as to what Mr. O'Connell may have told Mr. Wicks that Mr. Wicks—what Mr. Fawcett said.

"THE COURT: [Plaintiff's counsel]?

"[PLAINTIFF'S COUNSEL]: I believe it's admissible under the agency exception to the hearsay rule. In fact, I don't even think it's hearsay under the evidence code, under—

"THE COURT: As long as he's maintaining that it's an agency relationship as indicated, I would have to overrule the objection. Proceed.

"* * * * *

"[PLAINTIFF]: I believe he said that something to the effect that Mr. Fawcett said that what—John [O'Connell] was the president, and if it was his decision, that that's what it would be."

A statement offered against a party is not hearsay if it is

"[a] statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." OEC 801(4)(b)(D).

Defendant now argues that plaintiff did not lay a foundation that O'Connell was acting as defendant's agent with evidence independent of plaintiff's testimony of what O'Connell had said. Defendant, however, did not specify below that there was a lack of foundation. He argued only the hearsay point. Error may not be predicated on a ruling which admits evidence unless

"[a] timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." OEC 103(1)(a).

Moreover, lack of foundation would not be apparent to the

court from the context. Just before the question to which defendant objected, plaintiff testified:

> "Q. Now, did you ever talk to Mr. Fawcett during this period of time that you were talking with Mr. O'Connell about buying stock from—from him and Mr.—from Mr. O'Connell and Mr. Fawcett?
>
> "A. I never talked to Mr. Fawcett. Mr. O'Connell assured me that he was acting for Mr. Fawcett, that he was in contact lots of times with Mr. Fawcett, and that he was an agent, so to speak, for Mr. Fawcett. I never personally talked to Fawcett."

Defendant did not object or move to strike that testimony. Accordingly, the court already had heard plaintiff testify that O'Connell had told him that he was an agent of defendant. The court did not err when it overruled defendant's objection.

Defendant also assigns as errors that the court denied his motions for a directed verdict as to each of plaintiff's claims. He argues that, even if O'Connell had made misrepresentations or misleading omissions, the jury could not find that O'Connell was defendant's agent or that defendant controlled him or participated in or materially aided in the sale. He argues that the only evidence that implicated defendant was plaintiff's testimony, to which defendant had objected, of O'Connell's extra-judicial statements.

■ ■ The court did not err. Actual authority may be "implied from attending circumstances, and the apparent relations and conduct of the parties." *Durham v. Warnberg,* 62 Or App 378, 382, 660 P2d 208 (1983); *Young v. Neill et al,* 190 Or 161, 220 P2d 89, 225 P2d 66 (1950). Although the existence of agency cannot be proven *solely* by the extra-judicial statements of the purported agent, *see Jones v. Tri-State Realty,* 46 Or App 159, 163, 611 P2d 312 (1980), there is more in the record here.

In addition to the evidence detailed above, defendant testified:

> "I have always told Mr. O'Connell any time he wanted to buy stock, it was for sale. This business wasn't something I was looking to for my livelihood. It was more or less to get John [O'Connell] started in the business. I supported him all I could, but any time he wanted to buy one share or a hundred percent of my stock, he could have it."

There was evidence from which the jury could infer that, before the transaction with plaintiff occurred, defendant knew that O'Connell was soliciting investors, knew and approved of those efforts and knew and approved of the terms of the sale to plaintiff. Defendant testified that he told O'Connell, after he learned of the agreement with plaintiff, "You're running the company; it's your decision." Plaintiff also testified on cross-examination that O'Connell told him that he was in contact with defendant "lots of times," was acting for defendant and was his agent and that he told plaintiff before the sale was closed, "I talked to [defendant] last night and its ok. He's in agreement with it." Moreover, over defendant's objection, plaintiff testified about O'Connell's statement that defendant had said, "If it was [O'Connell's] decision, that that's what it would be." There was sufficient evidence, therefore, from which the jury could find that O'Connell had actual authority as an agent to sell defendant's stock and to make the representations and omissions on his behalf.

■■  As to plaintiff's second claim, the evidence was sufficient to permit the jury to find that defendant controlled O'Connell,[7] participated in or materially aided in the transaction and knew and approved of O'Connell's misrepresentions and omissions before plaintiff invested in the corporation.

Defendant and O'Connell testified in support of defendant's affirmative defense that defendant did not know, and in the exercise of reasonable care could not have known, of the existence of facts upon which his liability was based. Defendant had the burden to prove lack of knowledge. ORS 59.115(1)(b); ORS 59.115(3); *see also Fakhradai v. Mason,* 72 Or App 681, 696 P2d 1164, *rev den* 299 Or 314 (1985). The jury apparently did not believe O'Connell or defendant.

The jury awarded the same amount on each of plaintiff's first two claims. Defendant does not assign that as error. The court entered judgment in that amount. Accordingly,

---

[7] ORS 59.015(4) defines control:

" 'Control' means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

Plaintiff did not need to prove that O'Connell was defendant's agent to establish the essential elements of the second claim.

even if there was sufficient evidence to support the verdict on only one of the two securities law claims, the failure to grant a directed verdict on the other would be harmless error.

Affirmed.