# IN THE COURT OF APPEALS OF IOWA

No. 19-0491
Filed April 1, 2020

**GREATAMERICA FINANCIAL SERVICES CORPORATION,**
    Plaintiff-Appellee,

**vs.**

**NATALYA RODIONOVA MEDICAL CARE, P.C.,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Lars G. Anderson,

Judge.

The defendant appeals an adverse summary judgment ruling in this breach-

of-contract action. **REVERSED AND REMANDED.**

Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for

appellant.

Randall D. Armentrout and Leslie C. Behaunek of Nyemaster Goode, P.C.,

Des Moines, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

GreatAmerica Financial Services Corporation (GreatAmerica) seeks to enforce a "hell or high water" clause against an entity, Natalya Rodionova Medical Care, P.C. (NRMC), which has submitted evidence the signature on the financing contract is a forgery and that it did not accept or ratify the Agreement. Because GreatAmerica has not proved ratification of the Agreement as a matter of law, we reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

GreatAmerica is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. GreatAmerica provides financing for business equipment and/or software for commercial use.

NRMC is a professional corporation with its practice located in New York City, New York. The sole shareholder of the corporation is Dr. Natalya Rodionova, a licensed physician.

The "Agreement" GreatAmerica asserts has been breached is reproduced in its entirety below:[1]

---

[1] The quality of the copy of the Agreement is very poor. As best as we can make out, the Agreement purports to require sixty-three monthly payments of $999.00 for "Kyocera copier 4002i–2pcs–sp#W376Z03025/WL376Z02961 Grandstream phone system–1" provided by New York Digital Products Inc. (New York Digital).

AGREEMENT

# GreatAmerica
### FINANCIAL SERVICES

GREATAMERICA FINANCIAL SERVICES CORPORATION
525 FIRST STREET SE, CEDAR RAPIDS IA 52401
PO BOX 609, CEDAR RAPIDS IA 52406-0609

AGREEMENT NO.: 1296204

**CUSTOMER ("YOU" OR "YOUR")**

FULL LEGAL NAME: Nataliya Rodionova Medical Care P.C.

ADDRESS: 2109 Matthews Ave — Bronx, NY 10462-2514

**VENDOR** (VENDOR IS NOT OWNER'S AGENT NOR IS VENDOR AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS AGREEMENT)

New York Digital Products Inc. — Mineola, NY

**EQUIPMENT AND PAYMENT TERMS**

TYPE, MAKE, MODEL NUMBER, SERIAL NUMBER, AND INCLUDED ACCESSORIES:  ☐ SEE ATTACHED SCHEDULE

Kyocera copier 4002i-2pcs - sn#W376Z03025/W376Z02961

Grandstream phone system - 1

EQUIPMENT LOCATION: As Stated Above

TERM IN MONTHS: 63 | MONTHLY PAYMENT AMOUNT: $999.00 (PLUS TAX) | PURCHASE OPTION: Fair Market Value

**ADDITIONAL TERMS AND CONDITIONS**

AGREEMENT. You want us to pay your Vendor for the equipment referenced herein ("Equipment") and you agree to pay us the amounts payable under the terms of this agreement ("Agreement") each period by the due date. This Agreement will begin on the date the Equipment is delivered to you or any later date we designate. We may charge you a reasonable fee to cover documentation and investigation costs. If any amount payable to us is not paid when due, you will pay a late charge equal to: 1) the greater of ten (10) cents for each dollar overdue or twenty-six dollars ($26.00); or 2) the highest lawful charge, if less.

NET AGREEMENT. THIS AGREEMENT IS NON-CANCELABLE FOR THE ENTIRE AGREEMENT TERM. YOU UNDERSTAND WE ARE PAYING FOR THE EQUIPMENT BASED ON YOUR UNCONDITIONAL ACCEPTANCE OF IT AND YOUR PROMISE TO PAY US UNDER THE TERMS OF THIS AGREEMENT, WITHOUT SET-OFFS FOR ANY REASON, EVEN IF THE EQUIPMENT DOES NOT WORK OR IS DAMAGED, EVEN IF IT IS NOT YOUR FAULT.

EQUIPMENT USE. You will keep the Equipment in good working order, use it for business purposes only, and not modify or move it from its initial location without our consent. You must resolve any dispute you may have concerning the Equipment with the manufacturer or Vendor. Payments under this Agreement may include amounts you owe your Vendor under a separate arrangement (for maintenance, service, supplies, etc.), which amounts may be invoiced by us on your Vendor's behalf for your convenience.

SOFTWARE/DATA. Except as provided in this paragraph, references to "Equipment" include any software referenced above or installed on the Equipment. We do not own the software and cannot transfer any interest in it to you. We are not responsible for the software or the obligations of you or the licensor under any license agreement. You are solely responsible for protecting and removing any confidential data or images stored on the Equipment prior to its return for any reason.

NO WARRANTY. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU HAVE ACCEPTED THE EQUIPMENT "AS-IS". YOU CHOSE THE EQUIPMENT, THE VENDOR AND ANY/ALL SERVICE PROVIDER(S) BASED ON YOUR JUDGMENT. YOU MAY CONTACT YOUR VENDOR FOR A STATEMENT OF THE WARRANTIES, IF ANY, THAT THE MANUFACTURER OR VENDOR IS PROVIDING. WE ASSIGN TO YOU ANY WARRANTIES GIVEN TO US.

ASSIGNMENT. You may not sell, assign or sublease the Equipment or this Agreement without our written consent. We may sell or assign this Agreement or our rights in the Equipment, in whole or in part, to a third party without notice to you. You agree that if we do so, the assignee will have our rights but will not be subject to any claim, defense, or set-off assertable against us or anyone else.

LAW/FORUM. This Agreement and any claim related to this Agreement will be governed by Iowa law. Any dispute will be adjudicated in a state or federal court located in Linn County, Iowa. You consent to personal jurisdiction and venue in such courts and waive transfer of venue. Each party waives any right to a jury trial.

LOSS OR DAMAGE. You are responsible for any damage to or loss of the Equipment. No such loss or damage will relieve you from your payment obligations hereunder. We are not responsible for, and you will indemnify us against, any claims, losses or damages, including attorney fees, in any way relating to the Equipment. In no event will we be liable for any consequential or indirect damages.

INSURANCE. You agree to maintain comprehensive liability insurance acceptable to us. You also agree to: 1) keep the Equipment fully insured against loss or its replacement cost, with us named as loss payee; and 2) provide proof of insurance satisfactory to us no later than 30 days following the commencement of this Agreement, and thereafter upon our written request. If you fail to maintain property loss insurance satisfactory to us and/or you fail to timely provide proof of such insurance, we have the option, but not the obligation, to secure property loss insurance on the Equipment from a carrier of our choosing in such forms and amounts as we deem reasonable to protect our interests. If we secure insurance on the Equipment, we will not name you as an insured party, your interests may not be fully protected, and you will reimburse us the premium, which may be higher than the premium you would pay if you obtained insurance, and which may result in a profit to us through an investment in reinsurance. If you are current in all of your obligations under the Agreement at the time of loss, any insurance proceeds received will be applied, at our option, to repair or replace the Equipment, or to pay us the remaining payments due or to become due under this Agreement, plus our booked residual, both discounted at 3% per annum.

TAXES. We own the Equipment. You will pay when due, either directly or by reimbursing us, all taxes and fees relating to the Equipment and this Agreement. Sales or use tax due upfront will be payable over the term with a finance charge.

END OF TERM. At the end of the term of this Agreement (or any renewal term) (the "End Date"), this Agreement will renew month to month unless a) you provide us written notice, at least 60 days prior to the End Date, of your intent to return the Equipment, and b) you timely return the Equipment to the location designated by us, at your expense. If a Purchase Option is indicated above and you are not in default on the End Date, you may purchase the Equipment from us "AS IS" for the Purchase Option price. If the returned Equipment is not immediately available for use by another without need of repair, you will reimburse us for all repair costs. You cannot pay off this Agreement or return the Equipment prior to the End Date without our consent. If we consent, we may charge you, in addition to other amounts owed, an early termination fee equal to 3% of the amount we paid for the Equipment.

DEFAULT AND REMEDIES. If you do not pay any sum within 10 days after its due date, or if you breach any other term of this Agreement or any other agreement with us, you will be in default, and we may require that you return the Equipment to us, at your expense and pay us: 1) all past due amounts, and 2) all remaining payments for the unexpired term, plus our booked residual, both discounted at 3% per annum. We may also use all other legal remedies available to us, including disabling or repossessing the Equipment. You agree to pay all our costs and expenses, including reasonable attorney fees, incurred in enforcing this Agreement. You also agree to pay interest on all past due amounts from the due date, at 1.5% per month.

UCC. You agree that this Agreement is (and/or shall be treated as) a "Finance Lease" as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). You agree to forgo the rights and remedies provided under sections 507-522 of Article 2A of the UCC.

MISCELLANEOUS. This Agreement is the entire agreement between you and us and supersedes any prior representations or agreements, including any purchase orders. Any sums payable under this Agreement may include a profit to us. The original of this Agreement shall be that copy which bears your facsimile or original signature, and which bears our original signature. Any change must be in writing signed by each party.

**OWNER ("WE", "US", "OUR")** | **CUSTOMER'S AUTHORIZED SIGNATURE**

THIS AGREEMENT IS NON-CANCELABLE FOR THE FULL AGREEMENT TERM. THIS AGREEMENT IS BINDING WHEN WE FUND VENDOR FOR THE EQUIPMENT.

OWNER: GreatAmerica Financial Services Corporation | CUSTOMER: (As Stated Above)

SIGNATURE: ___ DATE: ___ | SIGNATURE: X ___ DATE: 10/23/17

PRINT NAME & TITLE: ___ | PRINT NAME & TITLE: Nataliya Rodionova ___

**UNCONDITIONAL GUARANTY**

The undersigned unconditionally guarantees that the Customer will timely perform all obligations under the above Agreement. The undersigned also waives any notification if the Customer is in default and consents to any extensions or modifications granted to the Customer. In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring us to proceed against Customer or any other party or exercise any rights in the Equipment. The undersigned, as to this guaranty, agrees to the designated forums and consents to personal jurisdiction, venue, and choice of law as stated in the Agreement, agrees to pay all costs and expenses, including attorney fees, incurred by us related to this guaranty and this Agreement, waives a jury trial and transfer of venue and authorizes obtaining credit reports.

SIGNATURE: X ___ | INDIVIDUAL: ___ | DATE: ___

GreatAmerica sent monthly invoices to NRMC beginning October 30, 2017.

According to GreatAmerica records, NRMC made four payments to GreatAmerica.

The first payment was by check in the amount of $1157.17 from the bank account

of NRMC dated "11/4/17" with the notation "office internet phone/fax etc" on the memo line. Additional payments as noted in a GreatAmerica "payment history report" were made on January 23 ($2355.24), March 29 ($2233.64), and May 21, 2018 ($2607.44).[2]

On May 17, 2018, Dr. Rodionova sent an email to Tim McEowen[3] concerning an April 23, 2018 invoice:

> Tim! Tony Barro and New York Digital betrayed me and broke the[ir] responsibility to me
> My services got interrupted, in both offices, because he (they) did not pay their bills
> I moved back with Verizon and Cable vision.
> You can pick up your phones.
> I cannot use them.
> If you want, and give me a fair price on used printers/ faxes, I will purchase them from your company.
> Let me know, how you want to approach it.
> Sorry,
> Ny Digital turned out to be criminals and a fraud.
> Let'[s] take everything into consideration, so I could pay you for equipment, if you are looking to sell it I am willing to buy.
> I am not looking to lease. That is out of the equation.
> Thank you. Respectfully,
> Dr Rodionova.
> Ps.
> The last 2 invoices send to Tony Barro.
> He was swearing, he will pay them.
> I have it in writing and witnesses. For all the damage he caused to my company.

On July 26, 2018, GreatAmerica sued NRMC, alleging "NRMC breached the Agreement by failing to make the required payments." GreatAmerica also

---

[2] The May 21 payment was authorized by Dr. Rodionova by telephone.
[3] According to an interrogatory answer, McEowen is an employee of GreatAmerica who "had communications with Defendant regarding late payments and buyout quote."

asserted a claim of unjust enrichment because "NRMC is in possession of the equipment financed by GreatAmerica."

NRMC denied the allegations of the complaint and affirmatively asserted (1) GreatAmerica "has unclean hands in that [it] knew or should have known that New York Digital . . . had a history of not performing its obligations with regard to sales of equipment to its customers, yet [GreatAmerica] continued to finance said sales"; (2) no authorized person of NRMC signed the Agreement; and (3) the representative of New York Digital "fraudulently induced [NRMC] to enter into a contract that was financed by GreatAmerica."  The answer was accompanied by an affidavit by Dr. Rodionova, which provides in part:

> I did not sign the document which is attached to the Petition by GreatAmerica . . . and I have not signed any document with GreatAmerica Leasing.
>     To the extent that the document purports to have my signature, it is a forgery.  The representative from New York Digital Products created accounts in my name that were not authorized by me.

On January 18, 2019, GreatAmerica sought summary judgment, arguing it did not matter if "no authorized person of the defendant signed" the Agreement because under Iowa law, "NRMC ratified the Agreement by accepting the equipment and making seven monthly payments.  Having ratified the Agreement, the plain language in the Agreement that it is "non-cancelable" must be enforced as a standard "hell or high water clause."

As support for its contention that NRMC accepted and used the equipment, GreatAmerica filed the affidavit of Steve Louvar:

> I am employed as a litigation specialist for [GreatAmerica.]  The information set forth in this Affidavit is based on my personal knowledge and my review of GreatAmerica's business records.

. . . .

On October 23, 2017, GreatAmerica employee, Katy Mulherin, performed a telephone verification with NRMC Employee Melissa Santiago. Exhibit 2 is a true and accurate copy of the Equipment Inspection/Verification. Santiago confirmed that the equipment had been installed and was working.

Exhibit 2 is copied here:

**EQUIPMENT INSPECTION/VERIFICATION**

| | |
|---|---|
| CUSTOMER NAME: | Natalya Rodionova medical care PC |
| APPLICATION NO: | 1296204 |
| PHONE NUMBER: | 718-794-1000  google |
| DATE/TIME: | 10/23  11:46 |
| CONTACT/TITLE: | melissa Santiago  medical Asst. |
| IS THE EQUIPMENT INSTALLED AND WORKING? | ☑ YES  ☐ NO |
| DATE OF INSTALL: | today |
| TERM: | 63 |
| PAYMENT: | 999.00 |
| SEC. DEP./ADV.: | |
| NEW OR USED EQ. | (NEW circled) |
| EQUIPMENT LOCATION: | Same as lease |
| BILLING ADDRESS (IF DIFFERENT FROM EQ. LOC.): | Same as lease |
| AP CONTACT: | AP |
| PHONE NUMBER: | |
| FAX NUMBER: | 718-794-5264 |
| EMAIL: | NRodionova@outlook.com |
| COMMENTS: | Natalya Rodionova Director |

In response, NRMC asserted the "handwritten part of Plaintiff's Exhibit 2 does not confirm the year that the person supposedly called" and "[t]here is no indication that equipment is working." In a February 5, 2019 affidavit, Dr. Rodionova averred:

(4) I dealt with New York Digital Products, Inc. with regard to certain equipment that New York Digital Products, Inc. was supposed to provide. I did not sign any agreement with GreatAmerica Financial Services Corporation or GreatAmerica Leasing. No one in my office was authorized to sign any agreement with GreatAmerica Financial Services Corporation or GreatAmerica Leasing.

(5) There is what looks like an initial on an agreement with GreatAmerica that has been provided to me since this lawsuit has been filed. That is not my signature.

(6) No agreement was ever signed with me or New York Digital Products, Inc. and as a matter of fact I parted ways with New York Digital Products, Inc. because of their actions with regard to the proposal they gave me concerning certain phone and copier equipment and their actions thereon.

. . . .

(8) The equipment dropped off at my offices by New York Digital Products, Inc. was used equipment and was not something I would purchase or finance from anybody.

(9) Melissa Santiago is not authorized to act on behalf of the corporation, is not authorized to accept delivery of equipment or make any determination as to whether or not payment is due and owing to anyone from the Defendant corporation, and is not authorized to determine if any equipment meets my corporation's needs or standards.

(10) When I contacted a representative from GreatAmerica Financial Services Corporation he was not helpful and he was only defending the actions of New York Digital Products, Inc.

(11) New York Digital Products, Inc. made the contact with GreatAmerica Leasing Corporation and I had nothing to do with deciding who New York Products, Inc. was going to deal with.

(12) With regard to the alleged agreement, I was not presented a copy of it when I contacted the GreatAmerica Leasing representative.

(13) . . . The equipment that was sent to my office was something that I could not use because it was specific for New York Digital Products, Inc. I never got any use out of the equipment.[4]

---

[4] NRMC answered interrogatory No. 14 as follows:
The agreement never was signed. New York Digital sent equipment to the Defendant even though I never signed contract with New York Digital and left it in the office. I found out that my identity was stolen in 2018 or end of 2017. Even I could not use the equipment (it was specific for New York Digital) and I have chosen Cablevision for one office and Verizon for another. I paid a lower price.

NRMC acknowledged it made seven payments but asserted it did so because New York Digital was not making promised payments. NRMC also asserted it was attempting to come to a resolution with GreatAmerica in light of fraudulent conduct by New York Digital.

On February 28, 2019, the district court granted GreatAmerica's motion for summary judgment. The district court noted the Agreement contains a hell-or-high-water clause, which is valid and enforceable under Iowa law. The district court found:

> NRMC confirmed receipt of the equipment and paid the invoices, one of which was paid by Dr. Rodionova herself on the phone. Both the verbal affirmation and the payments . . . function as acceptance of the goods and trigger the enforcement of the "hell or high water clause."
> . . . .
> The court finds that [NRMC] did accept the delivery of the goods both according to the phone call verification with GreatAmerica and to the extent there is any question of the substance of that phone call, by keeping the goods for seven months and making payments there upon, without any attempt to reject the goods.
> . . . .
> As with the conduct that constitutes acceptance of the goods, in the same ways, Dr. Rodionova ratified the contract with GreatAmerica, regardless of who signed the initial agreement. By accepting the equipment and keeping it, using it to some degree, and making seven monthly payments, Dr. Rodionova received a benefit from the agreement for which she also was obliged to continue making payments.

The court entered judgment for GreatAmerica for contractual damages of $60,879.51 plus interest, attorney fees of $16,724.00, and costs of $314.99.

NRMC appeals, contending genuine issues of fact remain that preclude a finding that NRMC ratified the Agreement by making payments.

**II. Scope and Standard of Review.**

We review the grant of summary judgment in favor of GreatAmerica for correction of errors at law. *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). Summary judgment is proper when the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The nonmoving party is entitled to have the evidence viewed in the light most favorable to its position. *See Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 895 (Iowa 2014). "Where reasonable minds can differ on how an issue should be resolved, a fact question has been generated, and summary judgment should not be granted." *Wolfe*, 795 N.W.2d at 73. "[O]ur review is limited to whether a genuine issue of material fact exists and whether the district court applied the correct law." *Id.*

**III. Discussion.**

In ruling in GreatAmerica's favor, the district court relied upon the case of *Life Investors Insurance Co. of America v. Estate of Corrado*, 838 N.W.2d 640 (Iowa 2013). In *Life Investors*, our supreme court stated:

> A principal may ratify the unauthorized act of an agent. *See Abodeely v. Cavras,* 221 N.W.2d 494, 502 (Iowa 1974) (stating a factor to determine whether a contract is ratified often is whether a principal accepted benefits from an agent's unauthorized act). Even if the actor who signed the contract was not Corrado's agent at the time of signing, "[a] person may ratify the act of an actor who was not an agent at the time of acting," providing the actor purports to be the person's agent or assumed to be the person's agent. Restatement (Third) of Agency ch. 4, intro. note, at 304 (2006).

838 N.W.2d at 644.

In discussing ratification,[5] the supreme court adopted the rule contained in the Restatement (Third) of Agency that an undisclosed principal may ratify an actor's unauthorized act. *Id.* at 647. "We reach this conclusion for the reasons set forth in comment "c" of section 4.03 of the Restatement (Third) of Agency and for the fact that our legislature has adopted this rule for negotiable instruments."[6] *Id.* "A person should not be able to accept the benefits of a contract even if the signer's acts are unauthorized, but deny his or her obligations under the contract because the signer's acts are unauthorized." *Id.*[7]

Under Restatement (Third) of Agency, which was adopted by our supreme court, "[r]atification is the consequence of a choice freely made by the principal. The principal may choose to ratify the action of an agent or other actor without knowing material facts." Restatement (Third) of Agency § 4.06 cmt. d. Furthermore, "[a] factfinder *may* conclude that the principal has made such a

---

[5] We observe that the *Life Investors* court was addressing "[o]nly ratification by the principal of an agent's signature" and not "ratification by an individual who had the power to avoid the contract but affirmed the contract." 838 N.W.2d at 645.

[6] Comment "c" provides:

> *Forgeries.* . . . Official Comment 3 acknowledges that a forger is not an agent. However, the person whose name is signed may retroactively adopt the forger's signature as the person's own. The retroactive adoption carries the consequences of ratification. Like ratification, it is a unilateral expression of a person's consent, and like ratification it does not require consideration to be enforceable. It may be in the principal's interest to ratify a forgery to obtain the benefit of a transaction not otherwise available.

[7] *See Life Inv'rs Ins. Co. of Am. v. Corrado*, 804 F.3d 908, 911 (8th Cir. 2015) (where insurer brought a breach-of-contract action against its life-insurance sales representative, alleging that defendant breached the parties' settlement agreement by failing to repay advances on monies he received from plaintiff, the district court granted summary judgment for plaintiff and court of appeals affirmed, holding that defendant was bound by the settlement agreement through ratification—even if defendant did not sign the agreement, he was bound by it because he did not object to it and accepted the benefits he received from it).

choice when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.* (emphasis added). Viewing the record in the light most favorable to NRMC,[8] we conclude there is a question of fact whether NRMC had knowledge that would have led a reasonable person to investigate further.

GreatAmerica asserts NRMC received GreatAmerica's invoice "referencing a finance agreement" [at which point] "NRMC had a choice: refuse payment under the Agreement and investigate the Agreement further; or accept the benefits of this Agreement without further investigation and perform under it." GreatAmerica overstates its evidence.

The initial billing to NRMC is set out below:

---

[8] *See Luana Sav. Bank*, 856 N.W.2d at 895.



GreatAmerica Financial Svcs.
PO Box 660831
Dallas, TX 75266-0831

HARD WORK • INTEGRITY • EXCELLENCE

**Remittance Section**                                   110

| | |
|---|---|
| Invoice Number: | 21562773 |
| Agreement Number: | 003-1296204-000 |
| Invoice Print Date: | 10/30/2017 |
| **Due Date:** | **11/23/2017** |
| **Total Due:** | **$1,157.17** |

Return Service Requested

☐ Check here for change of address (see reverse for details)

Use enclosed envelope and make check payable to:

ATTN: ACCOUNTS PAYABLE
NATALYA RODIONOVA MEDICAL CARE P.C.
2109 MATTHEWS AVE
BRONX NY 10462-2614

GreatAmerica Financial Svcs.
PO Box 660831
Dallas, TX 75266-0831

00000312962040000000000215627730000000000001157175

*Keep lower portion for your records - Please return upper portion with your payment*



GreatAmerica Financial Svcs.
PO Box 660831
Dallas, TX 75266-0831

HARD WORK • INTEGRITY • EXCELLENCE

| | |
|---|---|
| Invoice Number: | 21562773 |
| **Due Date:** | **11/23/2017** |
| **Total Due:** | **$1,157.17** |

**Important Messages**

**We appreciate your business!**
We are glad you chose GreatAmerica Financial Services Corporation. Please remove the remittance portion of this invoice and include it with your payment.

**Invoice Detail**

| Agreement 003-1296204-000: 2-Kyocera TASKalfa 4002i Copiers & Grandstream Phone Sys | Amount | Tax | Total |
|---|---|---|---|
| 1 Standard Payment | 999.00 | 88.67 | 1,087.67 |
| 2 One-Time Documentation Fee | 69.50 | 0.00 | 69.50 |
| | | | $1,157.17 |

The billing references "Agreement Number 013-1296204-000." Nothing is said of a "finance agreement." It does not provide any terms of the referenced agreement.

We also noted Dr. Rodionova's affidavit states: "There is what looks like an initial on an agreement with GreatAmerica that has been provided to me *since this lawsuit has been filed*. That is not my signature." (Emphasis added.) She also states, "[W]ith regard to the alleged agreement, I was not presented a copy of it when I contacted the GreatAmerica Leasing representative."

Perhaps a factfinder could conclude NRMC "had knowledge of facts that would have led a reasonable person to investigate further,"[9] but that is a question for a factfinder. *See Argus v. Ware & Leland*, 136 N.W. 774, 775–76 (Iowa 1912) (noting ratification presented a jury question).

We believe the same is true as to whether NRMC accepted the benefits of a contract. Dr. Rodionova's affidavit states Melissa Santiago "is not authorized to act on behalf of the corporation, is not authorized to accept delivery of equipment or make any determination as to whether or not payment is due and owing to anyone from the Defendant corporation and is not authorized to determine if any equipment meets my corporation's needs or standards." Dr. Rodionova also states, "New York Digital Products, Inc. made the contact with GreatAmerica Leasing Corporation and I had nothing to do with deciding who New York Products, Inc. was going to deal with." Moreover, "the equipment that was sent to my office was something that I could not use because it was specific for New York Digital Products, Inc. I never got any use out of the equipment."

We also observe there appears to be a question of fact as to whether NRMC attempted to reject the equipment. The evidence is not so one-sided that the issue can be determined as a matter of law. *Cf. GreatAmerica Leasing Corp. v. Davis-Lynch, Inc.*, No. 10-CV-13-LRR, 2011 WL 167248, at *9 (N.D. Iowa 2011) ("[T]he undisputed evidence demonstrates that Moreno's supervisor and Defendant's office manager, Adrienne Redd, accepted the copy machines and served as

---

[9] *See* Restatement § 4.06 cmt. b ("A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor. . . . The burden of establishing that a ratification was made with knowledge is on the party attempting to establish that ratification occurred.").

Defendant's primary contact with Seamless. Despite Redd's knowledge of the transactions, Redd continued to deal with Seamless on Defendant's behalf, and Defendant continued to use the copy machines Seamless provided to Defendant under the C/CAMP Agreements. Thus, Redd later ratified the agreements and Defendant benefitted from the use of the copy machines.").

Viewing the record in the light most favorable to NRMC, the district court erred in finding GreatAmerica proved ratification as a matter of law. There are genuine issues of material fact concerning ratification that preclude summary judgment. We therefore reverse the entry of judgment in favor of GreatAmerica and remand for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**

Ahlers, J., concurs; Greer, J., dissents.

**GREER, Judge** (dissenting).

I respectfully dissent; I would affirm the district court and grant GreatAmerica Financial Services Corporation (GreatAmerica) summary judgment against Natalya Rodionova Medical Care, P.C. (NRMC). As an affirmative defense to the GreatAmerica breach-of-contract claim, NRMC confirmed "[t]he representative from New York Digital Products, Inc. fraudulently induced the Defendant to *enter into a contract that was financed by GreatAmerica Financial Services Corporation*." (Emphasis added.) Next, Dr. Rodionova[10] verified she did not sign any document with GreatAmerica, but on October 23, 2017, Melissa Santiago,[11] a NRMC employee, confirmed the equipment leased (a telephone system and copiers) was installed and working. On top of that, NRMC made seven months of payments on the contract for the telephone system and copiers, one of which was personally authorized by Dr. Rodionova by telephone. Finally on May 17, 2018, seven months after delivery of the equipment, Dr. Rodionova sent GreatAmerica an email seeking to cancel the agreement. Without question, NRMC and its vendor, New York Digital Products, Inc. (New York Digital), are at crosshairs based on New York Digital's alleged fraud. But the question here is whether NRMC contracted with GreatAmerica.

The district court applied the "hell or high water" clause of the contract and found NRMC was bound because of its unconditional acceptance of the contract terms by usage and payment. The court confirmed the agreement is non-

---

[10] Dr. Natalya Rodionova is the sole shareholder of the professional corporation NRMC.

[11] Dr. Rodionova argues this employee had no authority to bind NRMC.

cancelable.  The court also determined NRMC ratified the contract by its actions and inaction.  GreatAmerica contends the district court got it right.  But finding there are still genuine issues of material fact to resolve, the majority reverses the district court's summary judgment ruling.  Those disputed facts are: (1) whether NRMC had insufficient knowledge so that it had no duty as a reasonable person to investigate further into the transaction, thereby avoiding ratification of an agreement the principal did not sign; (2) whether NRMC accepted the benefits of the contract; (3) whether Melissa Santiago authorized acceptance and approval of the equipment; and (4) whether NRMC rejected the equipment.  Even addressing these questions, I disagree that material facts prevent summary judgment as a matter of law.

Under established principles of summary judgment, NRMC's arguments fail.  A party resisting summary judgment must set forth specific facts which constitute competent evidence showing a *prima facie* claim.  Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999), *overruled on other grounds as stated in Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000); *see also Bauer v. Stern Fin. Co.*, 169 N.W.2d 850, 853 (Iowa 1969) ("[A] party 'may not rest upon the mere allegations or denials of his pleading.'  He must set forth specific facts showing there is a genuine issue.  He cannot merely say there is one; but it must appear 'by affidavits or otherwise' that this is the case." (citation omitted)).  NRMC, other than protesting unfairness, omits verified facts refuting summary judgment.

(1) Ratification. First, even looking at the facts in the light most favorable to the nonmoving party and assuming that Dr. Rodionova did not sign the GreatAmerica agreement and that someone forged her initials, it does not change this result. "Signature is not always essential to the binding force of an agreement. If accepted and acted upon by the parties as a binding engagement, mutuality appears without formal signature. This is elementary." *Henderson v. Henderson*, 114 N.W. 178, 179 (Iowa 1907). NRMC made seven months of payments to GreatAmerica for the equipment. When NRMC defaulted, it stopped making all payments but still had the equipment. The default came seven months after delivery of that equipment to NRMC. The district court found NRMC ratified the contract "[b]y accepting the equipment and keeping it, using it to some degree, and making seven monthly payments." Additionally, in the NRMC affirmative defenses, it asserted that "New York Digital Products, Inc. fraudulently induced [it] *to enter into a contract* that was financed by GreatAmerica Financial Services Corporation." (Emphasis added.)

After conceding *some* contract existed, I would find NRMC ratified the contract's terms. Our supreme court has said, "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Abodeely v. Cavras*, 221 N.W.2d 494, 502 (Iowa 1974) (quoting Restatement (Second) of Agency § 92, at 210 (Am. Law Inst. 1958)). "There are two types of ratification: (1) ratification by the principal of the signature of an agent, and (2) ratification by an individual who had the power to avoid the contract but affirmed the contract." *Life Inv'rs Ins. Co. of Am. v. Estate*

*of Corrado*, 838 N.W.2d 640, 645 (Iowa 2013). Whether the party "expressly or implicitly authorized a person to sign on his behalf is not a necessary fact to determine" ratification of a contract since a principal may ratify the act of an agent. *Id.* at 644. "In other words, if ratification exists a contract exists and the action is on the contract." *Id.*; *see also Mayrath Co. v. Helgeson*, 139 N.W.2d 303, 306–309 (Iowa 1966) (holding ratification occurred where corporation knew employee accepted settlement agreement and corporation accepted benefit of contract).

In the second type of ratification—ratification by an individual who had the power to avoid the contract but affirmed the contract—failure to act can be fatal. NRMC asserts it did not ratify the actions of New York Digital because it did not know material facts about the contract terms. So NRMC and the majority assert a fact question exists on whether NRMC had knowledge that would have led it to investigate further. *See* Restatement (Third) of Agency § 4.06 cmt. d (Am. Law Inst. 2006).[12] But under the undisputed facts NRMC had information and ratified without a further investigation. Even though NRMC had not seen the contract terms before suit, it received a billing referencing an agreement number and "your agreement."[13] NRMC confirmed it had no agreement with New York Digital. Yet

---

[12] Restatement (Third) of Agency § 4.06 cmt. d provides,
> *d. Risk of lack of knowledge.* Ratification is the consequence of a choice freely made by the principal. The principal may choose to ratify the action of an agent or other actor without knowing material facts. A factfinder may conclude that a principal has made such a choice when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.

[13] Under "ADDITONAL INFORMATION" the billing noted:
> If you have a right under *your agreement* to purchase the equipment at or after the *end of the term of the agreement*, and you properly exercise such right, you are hereby notified that the seller of the

it received billings from GreatAmerica, received equipment at its office, and paid seven months of payments without protest. Under any commercial scenario, a company would not pay a billing without investigating what the term "agreement" meant in the billing. *Life Inv'rs Ins. Co. of Am. v. Corrado*, 804 F.3d 908, 912–13 (8th Cir. 2015) (upholding summary judgment and concluding, when faced with inconsistencies about the commercial relationship, Corrado ratified an agreement, which he claimed he had not signed, but had operated under for years).

(2) Acceptance of Benefits. Second, NRMC accepted the equipment and made payments from when it was delivered in October 2017 until May 2018 when the last payment was authorized over the telephone by Dr. Rodionova. It matters not whether or how much they could use it. Here because the agreement was ratified, under the "hell or high water" clause, once a lessee formally accepts the property there is an unconditional obligation to pay the lease payments required under the agreement. *See, e.g.*, *Hinkel Excavation & Constr., Inc. v. Constr. Equip. Int'l, LTD.*, No. C00-4090-MWB, 2001 WL 34008497, at *5–6 (N.D. Iowa 2001); *Citicorp of N. Am., Inc. v. Lifestyle Comm. Corp.*, 836 F. Supp. 644, 655–56 (S.D. Iowa 1993); *GreatAmerica Leasing Corp. v. Star Photo Lab, Inc.*, 672 N.W.2d 502, 504 (Iowa 2003). It does not matter if property is suitable for its intended purpose, is lost, or is destroyed. *Citicorp*, 836 F. Supp. at 655–66. The court in *Hinkel Excavation* noted:

---

equipment ("Seller") has assigned to Account Services Exchange LLC, a qualified intermediary, as part of an Internal Revenue Code Section 1031 like-kind exchange program, Seller's rights (but not its obligations) under *the agreement* to sell office and/or communication equipment to you.

(Emphasis added.)

> The essential practical consideration requiring liability as a matter of law in these situations is that [hell or high water] clauses are essential to the equipment leasing industry. To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier-assignee of rental payments is guaranteed security for his outright loan to the lessor. Without giving full effect to such clauses, if the equipment were to malfunction, the only security for this assignee would be to repossess equipment with substantially diminished value.

2001 WL 34008497, at *7 (quoting *Colorado Interstate Corp. v. CIT Grp./Equip. Fin., Inc.*, 993 F.2d 743, 748 (10th Cir. 1993)).

(3) Melissa Santiago's Actions. Third, NRMC did not dispute that Melissa Santiago said the equipment was accepted and working but instead argues she was not authorized to accept the equipment or make any determination about its working condition. And following the October 2018 contact between Santiago and the GreatAmerica representative, payments were made and there was no rejection of agreement or equipment. Through these undisputed actions, NRMC accepted the equipment by the October 2018 phone call between GreatAmerica's employee and Santiago, NRMC's employee, wherein she confirmed that the goods were delivered and were operational. *See Star Photo Lab, Inc.*, 672 N.W.2d at 506; *see also GreatAmerica Leasing Corp. v. Davis-Lynch, Inc.*, No. 10-CV-13-LRR, 2011 WL 167248, at *5 (N.D. Iowa Jan. 19, 2011). NRMC provided no affidavit of Santiago refuting the acceptance of the equipment or its working condition.

(4) Rejection of Equipment. Finally under this record, there is no factual dispute impacting the summary judgment ruling. Reviewing the facts in the light most favorable to NRMC, no rejection of the equipment occurred until Dr. Rodionova emailed GreatAmerica suggesting the phones did not work but she would consider buying the copiers and fax. Belated efforts to cancel a lease cannot

constitute an "effective rejection." A refusal to keep making payments after seven months of payments does not constitute an effective rejection of goods under Iowa law. *See In re Rafter Seven Ranches L.P. v. C.H. Brown Co.*, 546 F.3d 1194, 1201–02 (10th Cir. 2008) (holding lessee who made no payments under the leases but did nothing to reject defective sprinklers for six weeks did not reasonably reject the goods); *Davis–Lynch, Inc.,* 2011 WL 167248, at *5 (stating lessee's payments over nine months before refusing to continue to pay "does not constitute an effective rejection of goods under Iowa law"); *Campbell v. AG Finder Iowa Neb.*, No. 03-0323, 2004 WL 893937, at *3 (Iowa Ct. App. Apr. 28, 2004) (noting a rejection is ineffective unless made within a reasonable time).

Based on these undisputed facts, I believe the district court correctly granted summary judgment against NRMP. I would affirm the summary judgment ruling and enter judgment accordingly.